FORT V. BLAGG ET AL.

1. STATUTE OF LIMITATIONS: *None against Probate Court allowances.*
The Statute of Limitations does not run in favor of an estate against a claim which has been duly allowed and before the administration has been entirely closed.

2. ADMINISTRATION: *Allowances are judgments ; when and how to be paid.*
A probate court allowance has the force and dignity of a judgment; but no execution can be issued upon it, nor demand made upon the personal representative for payment until payment is ordered by the court; and the court must not order payment un. il it first ascertains all the debts of its class, and those having precedence, and the amount of the assets; and must then *pro rata* them, if necessary, before ordering payment. Meanwhile, no suit can be brought upon the allowance itself against the personal representative. He cannot pay without an order of the court, except at his peril.

3. STATUTE OF LIMITATIONS: *As to holders of the property of an estate.*
In a suit to collect an allowed claim out of property of the estate, the Statute of Limitations will run in favor of all persons holding the property adversely, whether under or against an administration; although the allowance as against the estate may not be barred.

APPEAL from *Sebastian* Circuit Court in Chancery.
Hon. J. H. ROGERS, Circuit Judge.

STATEMENT.

This was a suit in equity instituted by Fort against Thomas B. Blagg and others, in the Circuit Court of Sebastian county, at Greenwood, on the twenty-fifth of August, 1879.

A demurrer was sustained to the original complaint, and thereupon the plaintiff filed an amended complaint, alleging, in substance, that on the —— day of November, 1855, Samuel Blagg had died in said county, seized and possessed

of certain tracts of land, in the county, which he particularly describes, and leaving the defendants, his children, as his only heirs at law. That one James B. Spring, was appointed and qualified as administrator of his estate; that within two years thereafter the plaintiff presented to said administrator his claim against said estate, duly probated, and afterwards, on the twenty-second of April, 1856, the probate court of the county allowed said claim, amounting, with interest, to $920.00, and classed it in the fourth class; all of which had been paid except about $367.00. That in November, 1859, said administrator had obtained an order of the probate court to sell said lands for the benefit of the heirs of said deceased, and on the fourteenth day of December, 1859, had sold them under said order, to one John S. Quinlin, for the sum of $2000, who executed to said administrator his bond for said purchase price, and a mortgage upon said lands, to secure its payment; and said sale had at the January term, 1860, been duly reported to and confirmed by said probate court. That afterwards said administrator died and C. B. Neal was, on the fifteenth day of February, 1869, appointed as administrator in his stead, and had instituted an action in said Circuit Court to foreclose said mortgage and sell said land for the payment of the purchase price, and had obtained a decree accordingly; and the lands had been sold by a commissioner of the court, at public sale, on the twentieth of January, 1873, to the defendant, W. A. Blagg, for the sum of $2500. That the purchase was made by said W. A. Blagg for his co-defendants, the children and infant heirs of the deceased, for whom he was guardian; that the sale had been confirmed by said Circuit Court at the February term, 1875, but no part of the purchase money had been paid to the administrator, and he had, on the —— day of July, 1874, so reported to the probate court, and also that the purchase was for said heirs;

Fort v. Blagg et al.

and at said term said probate. court had discharged him as such administrator. That the amount bid for said lands was more than sufficient to satisfy all demands allowed against said estate, and is still due and unpaid, and is a lien upon said lands.

Prayer for an account of the amount still due on his claim against said estate, and that it be declared a lien upon said lands, and that the defendants be required to pay said amount by a fixed day, or in default therein, the said lands be sold for its payment. Only the heirs were made defendants.

The defendants demurred, 1st, for want of jurisdiction ; 2nd, defect of parties ; 3rd, want of equity.

The demurrer was sustained and the plaintiff appealed.

*Duval & Cravens*, for appellant :

1. The court had jurisdiction. 13 *Ark.*, 559 ; 14 *Ib.*, 260 ; 15 *Ib.*, 414.

2, There was a defect of parties defendant. 31 *Ark.*, 234. The suit was properly against the heirs.

3. The action was not barred by limitation. 33 *Ark.*, 141, *McCustian* v. *Ramey* ; *Angel, on Limitations, p.* 55. The cause of action did not arise against defendants until they came into possession of the lands,

EAKIN, J. The demurrer presents three questions to be decided by the face of the complaint : 1st. Had the court jurisdiction ? 2nd. Were there proper parties ? And, 3d. Did the complaint show any such equities as would move the court to grant the relief ?

The lands lay in Sebastian county, in the district of the

59–38

court.   The object of the bill is to fix a lien upon them, and subject them to the payment of a debt.   The court had jurisdiction to hear and determine the case, and to grant the relief, if a proper case had been shown, with proper parties before it.   The last two questions will be considered together.

1. STAT-
UTE OF LIM
ITATIONS:
None
against
Probate
Court al-
lowances.

2. Allow-
a ices are
judgments

First, as to the Statute of Limitations :   That does not run in favor of an estate against a claim  that has been duly allowed, and before the administration has been entirely closed.   It stands, meanwhile, waiting payment, in due course, under orders of the court.   It has the force and dignity of a judgment, but differs from it very materially in several respects.   No execution can issue upon it.   No demand can be made for it of the personal representative, until its payment be ordered, and the order of payment does not always, or generally, follow the allowance.   Never as a matter of course.   The court must first ascertain all the debts of its class, and all having precedence ; and must take an account of the assets, and *pro rata* them, if necessary, before ordering payment.   Meanwhile, no suit can be brought upon the allowance itself, against the personal representative.   The allowance is the end of the law.   Suits against administrators or executors are only for the purpose of ascertaining debts, to the end  that they may be allowed and administered.   Indeed, the personal representative *cannot* pay allowances before orders, unless at his peril.   The allowance stands for the notice and guidance of the court, as an ascertained right, to be provided for as long as assets can be found.   It is quite plain that the Statutes of Limitation have no application in favor of an estate as against allowances ; or it might be practicable, by long postponements of, or impediments to the closing of an estate, to defeat all the allowances wholly.   There is no provision for their renewal or revival.

Fort v. Blagg et al.

But this is not a claim against an estate. It professes to set up an equity against heirs, to whom lands have descended, to burden the lands with a debt, duly allowed against the estate, but never paid. In favor of all persons holding adversely, whether under or against an administration, the Statute will run. They stand on different grounds, and may hold by their adverse possession; although the allowance, as against the estate, may not be barred. There is no personal claim against them, as to which they can plead the Statute. They can only claim that after a certain adverse holding, their title and possession cannot be disturbed for the purpose of bringing back into the administration assets for the payment of debts. With reference to this view of the case, it does not appear that they have been seven years in possession. The possession, in contemplation of law, was in the administrator, and no holding, adverse to him, appears on the face of the bill. It had not been seven years after his discharge before this bill was filed, and the Statute did not bar.

But, in truth, the bill, properly considered in its effect, does not charge them as heirs, but as purchasers. The lands never decended to any one, save in contemplation of law. The title, it is true, vests immediately on the death of the ancestor; but practically, the control and right of possession of the lands was with the administrator, until, by order of the probate court, they were sold to John S. Quinlin, on the fourteenth of December, 1859, for the sum of $2000.00. They passed from the estate by that sale. The mortgage, to secure the purchase money, became assets of the estate, and there was a lien thereby created; but the control and management of the property was gone from the administrator, and heirs together. All the creditors could claim was that the $2000 note should be collected and divided amongst them.

The administrator, d. b. n., Neal, who succeeded Spring, took steps to this end. A foreclosure was decreed, and under it, in January, 1873, the lands were sold for $2500, to defendant, W. A. Blagg, who, at the time, was guardian of the infant heirs of deceased, and purchased as such. This sale was reported to the Chancery Court and confirmed, although, for some reason, not explained, no money was paid to the estate on the purchase.

Supposing that the guardian was authorized to purchase for the benefit of the infants, the effect of the transaction was simply to substitute as assets for the payment of the debts of the estate and for distribution, the obligation of W. A. Blagg to pay the $2500, bid at the sale, or so much thereof as would satisfy Quinlin's mortgage. All over that would belong to Quinlin. Blagg, as guardian, took by purchase, just as if the infants had been the heirs of any one else than the deceased. The lands did not descend to the heirs, nor were they purchased from the estate. It was a simple coincidence that they were purchased by the guardian for the benefit of the children of the intestate. Neal, as administrator d. b. n., should have collected the amount due from Quinlin, paid the debts and distributed the surplus. The creditors have no pretence to follow the lands and fix a lien upon them for their allowances. They must look to the estate.

It appears that this fund is yet unadministered, and the creditors may take steps to have the administration revived in the proper constitutional tribunal.

It may be that complainants are the only creditors; but the bill does not show that. Even if it did, however, it would not make a proper case for equity. The constitution invests the probate courts with the exclusive original jurisdiction to settle estates; and without some equitable ele-

ment to invoke the aid of the Chancellor, the administration should not be lifted into a court of equity.

The bill did not show cause of action, and the demurrer was properly sustained.

Affirm the decree of dismissal, which will be without prejudice.