Phillips v. Phillips.

Opinion delivered March 20, 1922.

Executors and administrators—relief against probate allowances. —Where an executor procured improper allowances in the probate court aganist the estate without fraud, and these allowances were acquiesced in by all parties under a mistaken construction of the will, no appeals being prosecuted, equity has no jurisdiction to relieve against such allowances.

Appeal from Pulaski Chancery Court, *John E. Martineau*, Judge; reversed in part.

*Price Shoffner,* for appellants.

The court erred in restating the accounts of William James Phillips and in disallowing the amounts paid by him to James Phillips under the will.

The allowance of a claim by the probate court has the force and effect of a judgment. 5 Ark. 468; 48 Ark. 277; 38 Ark. 471; 35 Ark. 205. It is binding upon all parties and can only be set aside for fraud. 90 Ark. 261; 73 Ark. 440; 86 Ark. 368; 50 Ark. 217; 40 Ark. 393; 102 Ark. 114.

The court erred in holding that there was such a mistake as should be relieved against in equity. 16 Cyc. 66; 27 Cyc. 809; 16 Cyc. 73; 16 Cyc. p. 68, notes 11 and 12.

The court erred in holding that the allowances made to the executor by the probate court should not be enforced against the residuary property.

*Louis Rhoton,* for appellees.

Smith, J. Mrs. Sarah M. Phillips died testate, and we had occasion to construe her will in the case of *Phillips* v. *Phillips,* reported in 143 Ark. p. 240. The will

of Mrs. Phillips provided that William James Phillips, her son and executor, should pay her husband the sum of $50 per month, and in the case of *Phillips* v. *Phillips, supra,* we held that it was the intention of the testatrix that this sum should be paid by her son and executor out of the property devised him, and not out of the *corpus* of the estate.

Soon thereafter three of the children of the testatrix who were devisees under the will brought a suit in the chancery court in which they attacked the settlements made by the executor, on the ground that credits had been allowed the executor as a result of a mutual mistake of all parties in the construction of the will.

These payments of $50 per month had continued for about six years and aggregated approximately $3,000, and had been reported in each of the annual settlements of the executor, and these settlements had in due course been each regularly approved by the probate court.     This suit sought to set aside these probated claims, together with the following claims: $199 for the funeral expenses, and certain items of expense incurred in the course of administration.     It was also alleged that the testatrix had left a certain lot which was incumbered with a mortgage to the W. B. Worthen Company for $400, which the executor had not paid off but had suffered to be sold under a decree of foreclosure. It was alleged that the executor should not have suffered this property to sell, but should have paid off this incumbrance with property devised to him personally under the will.     It was further alleged that on or about May 20, 1920, the executor had obtained an order of the probate court for the sale of the lands of the testatrix to pay the probated demands, and that, as the time for an appeal from the probate orders had expired, the executor was about to proceed to carry out the order of the probate court permitting him to sell said property and would do so unless restrained from so doing.     There was a prayer that all claims which had been allowed the

executor, as a result of the mutual mistake of the parties, by the probate court be disallowed, and that the order of sale made by the probate court be so modified that the property should be sold to pay only the amounts to which the executor was legally and equitably entitled.

The executor answered and alleged that he had interpreted the will as directing him to pay the $50 per month to his father out of the assets of the estate other than the property devised and bequeathed to himself. That, acting upon this belief, he had made these payments regularly, and had reported them annually in his settlements with the probate court. That all parties in interest acquiesced in this construction of the will and knew that the executor was charging the estate with these payments so being made, and that this acquiescence continued until he had so paid to their father, James Phillips, a sum largely in excess of the value of the property devised to him individually. It was further alleged in the answer that the plaintiffs in this suit had full knowledge of these payments to their father, and that credit therefor was being allowed in the probate court, and that these orders of allowance were obtained without any fraud being practiced upon, or misrepresentations made to, the court, and that plaintiffs had, by their laches, estopped themselves to question the probate court judgments, and that they were also barred by lapse of time allowed by law for prosecuting appeals from these judgments

There appears to be no substantial conflict in the testimony, and the final decree rendered in the court below restrained the executor from asking or receiving any order of the probate court to sell the residuary property of the estate for any amount which included the payments made by the executor to James Phillips. It was further decreed that all other allowances which had been made by the probate court "be made a charge upon what is known as the residuary property, and that the prayer of the plaintiffs that the defendant, William

James Phillips, be enjoined from asking an order from the probate court to sell said residuary property to satisfy his claims for said amounts be denied.'' All parties have appealed.

As has been said, there is no substantial conflict in the testimony, and the litigation arises out of the different interpretations given our opinion in the case of *Phillips* v. *Phillips, supra.* It is the insistence of appellees that we held the claim for monthly advances to James Phillips were not chargeable to the *corpus* of the estate, and that the reason for so holding is equally applicable to the charges for which the executor was allowed credit, and that the settlements including these items should be corrected to disallow them.

Counsel mistake the effect of our holding. We did not undertake to review the judgments of the probate court made in the course of the administration of this estate. Upon the contrary, we said that, ''there is no allegation in any of the pleadings of fraud in the settlement of his accounts, and no proof thereof. There is nothing, therefore, in this record, so far as the accounting is concerned, to justify the court of chancery in lifting the administration of the estate of Sarah M. Phillips out of the jurisdiction of the probate court.'' We there further said: ''The chancery court, therefore, should have refused to entertain any jurisdiction over the executor, William James Phillips, so far as the matter of accounting and settlement with the probate court is concerned, and it should have refrained from rendering any decree for or against him and from giving directions as to how he should proceed in the future management of the estate. These were matters exclusively within the jurisdiction of the probate court. (Cases cited). The above authorities show that under the pleadings and proof in this record the only question which the court could or should have considered was the construction of the will of Sarah M. Phillips to determine the scope of the trust created by it and the duties of the trustee in administering the trust. That is as far as this court can go.''

The theory upon which we held chancery had jurisdiction was that the will was ambiguous and required construction. We then proceeded to construe the will, and, in doing so, held that the intention of the testatrix was that her executor should pay the monthly stipend to James Phillips out of the estate devised him personally; but we did not intend thereby to vacate and set aside the judgments of the probate court. To have done so would have been to have assumed appellate jurisdiction over the probate court, and after the time for an appeal had expired.

It does appear that the opinion we now express renders valueless to the residuary legatees the opinion in their favor in the former appeal, that the executor should charge himself personally with the advances to their father. But appellees have only themselves to blame for their delay. It affirmatively appears that this administration was pending in the probate court for six or seven years, and settlements by the executor were regularly made, and, in the due course of procedure, were approved. All parties in interest knew the executor was charging the estate, and not himself, with the monthly advances to James Phillips. No fraud was practiced upon the court in procuring the approval of these settlements; but they were acquiesced in by all parties because of the mistaken construction of the will which all parties had placed upon it. The executor makes the showing that he advanced to James Phillips a sum of money largely in excess of the value of the property devised him, and he states the fact to be that he would not have accepted the devise to himself if any insistence had been made that this devise was subject to the charge of paying James Phillips the $50 per month directed by the will.

These orders of the probate court approving the executor's settlements have the force and effect of judgments, and appeals therefrom should have been taken within the time allowed by law, and the failure so to do cannot be excused by the showing now made that all par-

ties had mutually misconstrued the will. *Brown v. Hanauer,* 48 Ark. 277; *Fort v. Bragg,* 38 Ark. 471; *Carter v. Engles,* 35 Ark. 205; *Davis v. Rhea,* 90 Ark. 261; *James v. Gibson,* 73 Ark. 440; *Brown v. Nelms,* 86 Ark. 368; *Jacoway v. Dyer,* 50 Ark. 217; *Trimble v. James,* 40 Ark. 393; *Hoshall v. Brown,* 102 Ark. 114.

The court below should not, therefore, have enjoined the probate court from ordering the sale of the residuary property for any amount which includes the advances to James Phillips, and that part of the decree will be reversed.

The refusal of the chancery court to enjoin the sale of the residuary property in satisfaction of the other probated demands is affirmed.