Dyer v. Jacoway.

---

DYER v. JACOWAY.

1. ADMINISTRATION: *Settlement of estates: Interference of equity.*

    A court of equity will not interfere with proceedings in the probate courts for the setment of estates, to correct mere errors or irregularities, unless they are sufficiently gross to raise the presumption of fraud.

**2. SAME:** *Administrator's accounts: Liability for interest.*

It is the duty of an administrator to report promptly to the probate court the collections he makes on debts due his intestate; and where he holds money thus received, for a considerable time before making such report, he should be charged with interest on it from the date of its collection.

**3. SAME.** *Same:* Erroneous calculation accepted by the court.

An administrator, in stating his accounts, took an excessive credit of $589.30, and charged himself with $4.132.59, as the true amount of certain notes, when he should have charged himself with $4,556.33. The amounts thus charged and credited were ascertained by a calculation which the administrator made, and which was accepted and acted on by the probate court as being correct. *Held:* That this was such a misrepresentation (although made through mistake) as amounted to a fraud on the court and on the estate.

**4. SAME:** Allowance in administrator's favor, of claim barred by the statute of limitations.

The allowance by the probate court of a claim in favor of an administrator, against the estate of his intestate, will not, in the absence of proof that it was obtained by fraud, accident or mistake, be set aside by a court of equity, on the ground that the claim was barred by the statute of limitations.

APPEAL from *Yell* Circuit Court in Chancery.

E. E. BRYANT, Special Judge.

*U. M. and G. B. Rose,* for appellants.

1. That a person cannot go into equity to correct mere errors in the settlement of administrators has always been the settled doctrine of this court. The remedy is by appeal. 8 *Ark.*, 268; 20 *Id.*, 527; 33 *Id.*, 575; 34 *Id.*, 64, 117; 36 *Id.*, 383; 39 *Id.*, 256; 40 *Id.*, 393; 43 *Id.*, 171; 45 *Id.*, 505. There must be fraud. 42 *Id.*, 189. The burden of showing fraud is on plaintiffs. 23 *Id.*, 444; 33 *Id.*, 727; 11 *Id.*, 378; 6 *Id.*, 308; 9 *Id.*, 482; 18 *Id.*, 124; 20 *Id.*, 217; 22 *Id.*, 184; 33 *Id.*, 259; 37 *Id.*, 146; 45 *Id.*, 492.

Nearly, if not all the charges are mere errors, which are admitted, and a willingness expressed to have them corrected. Many of the errors are against the appellant administrator. The proofs show only a few clerical mistakes, less than the administrator made against himself, and a few trifling circumstances, which do not establish fraud.

Review the charges in detail and contend that they were mere errors.

The 29th charge, that a claim was allowed in favor of a firm of which the administrator was a member when it was barred, is not proved. The claim was presented to the court and duly allowed and classified. It was then, if error at all, an error of the court. The fact that a claim is barred does not make it fraudulent. The administrator may waive the plea of the statute if he thinks fit. 22 *Ark.*, 290; 3 *Williams' Ex'rs.*, p. 1802; *Perry on Trusts*, sec. 481; *Wood on Lim.*, sec. 188; 8 *Bush.*, 566.

The 31st charge, as to excessive commissions, contains no charge of fraud, misrepresentation or imposition, and is merely an error. The claim of commissions above that prescribed by law does not indicate fraud. 42 *Ark.*, 189; 20 *Id.*, 527. The allowance of commissions is within the jurisdiction of the probate court, and its judgment is conclusive in the absence of proof showing fraud in obtaining such allowance. *Ib.*

2. If the accounts are to be opened for the correction of errors, prejudicial to the estate, they must also be opened for the correction of those prejudicial to the administrator, and the latter preponderate. 40 *Ark.*, 393.

3. Interest was wrongfully charged the administrator in his fifth account, on the amounts paid him by H. M. Jacoway, commissioner. Where an administrator holds funds subject to the order of court, without using them and without deriving any profit from their possession, he is not to be charged interest. See 11 *Pick.*, 371; 2 *Redf. Wills*, 881; 3. *Gill & J.*, 20; 1 *McCord Chy.*, 247; 1 *Barb. Chy.*, 77.

*L. C. Hall* and *Jno. Hallum*, for appellees.

Take up the charges specifically, as well those that were rejected as those sustained by the chancellor, and review

Dyer v. Jacoway.

them. Although the court finds no fraud in the first charge, that the administrator failed to charge himself with interest, on the Hilb & Jessup note, every presumption is against the administrator. 20 *Ark.*, 536.

As to the thirteenth, the administrator was clearly chargeable with 10 per cent interest. *Mansf. Dig.*, sec. 92. He is bound to show what has been done with the money to avoid the conclusion that he has made use of it. 1 *Binney, Penn.*, 194; 1 *Johns. Chy.*, 620; 4 *Id.*, 303; 6. *Am. Dec.*, 597.

The twenty-ninth charge, we claim, was barred by limitation, and should not have been allowed. The plea that it was a running account does not take it out of the statute. It was not a *mutual* account. The fact that the administrator fails to attach the dates to the items charged must be taken against him. 20 *Ark.*, 79.

After reviewing all the charges, contend that fraud was clearly proven, and not only " a few clerical mistakes," most of which have been corrected. The administrator's attention has been called to those so-called "errors," and they have not been corrected.

Mere errors or irregularities made upon fair consideration with full knowledge of the facts, and without concealment or improper practice on the part of the executor, should be corrected on appeal, but where there is a combination of acts, omissions, irregularities and erroneous allowances, sufficient altogether to satisfy the mind that if fraud had not really been intended, there had at least been such gross carelessness and reckless disregard of the rights of others, as to make the inference of fraud necessary to the purpose of justice. 33 *Ark.*, 732, 730; 42 *Id.*, 189; 20 *Id.*, 535; 36 *Ark.*, 383.

An omission to account for money or other assets is a legal fraud, which chancery will correct, whether the

Dyer v. Jacoway.

omission was intended or by mistake.   45 *Ark.*, 505.
Constructive fraud is sufficient.   40 *Ark.*, 402 ; 48 *Id.*,
544.

An administrator is liable and must account for inter-
est when he mingles the money with his own, or uses it
in his private business, or neglects to settle his accounts
for a long time, or to distribute or pay over the money
when he ought to do so.   *Perry on Trusts, secs.* 468, 472 ;.
20 *Ark.*, 527 ; 1 *Johns. Chy.*, 620 ; 4 *Id.*, 303.

Where a trustee is guilty of any breach of trust, or
of any vexations or improper conduct, the court can
withhold all compensation.   *Perry on Trusts, sec.* 919.

The jurisdiction of courts of chancery rests upon the
broad principle, that equity will not allow proceedings of
other courts to be made the means of perpetrating suc-
cessful frauds, and it will relieve against accidents or
mistakes when they would cause irreparable wrong and
injustice.   33 *Ark.*, 727 ; 42 *Id.*, 186.

BATTLE, J.   Appellees, " creditors of the estate of Samuel
Dickens, deceased, on behalf of themselves, and other cred-
itors of said estate, filed their bill in 1878, against the ad-
ministrator, Jacoway, his sureties on his bond, and Mrs.
Elizabeth D. Jacoway.   The object of the bill was to set
aside for fraud the settlements made by Jacoway in the pro-
bate court, to restate the accounts, to hold the sureties liable,
and to subject to any decree to be rendered, certain real
estate to which Mrs. Jacoway had legal title.   A demurrer
to the bill for want of equity was sustained, whereupon com-
plainants rested.   The bill was dismissed and they appealed "
to this court.   The judgment of the court below was re-
versed on appeal, and the cause was remanded for further
proceedings.   It then proceeded to a final hearing and was
heard upon its merits.   The settlements were held to be

fraudulent in many respects and were restated by the court below; and the defendants excepted and appealed to this court. Plaintiffs also excepted to many rulings of the court against them and again appealed.

Dickens died intestate, on the second of March, 1867. Jacoway administered on his estate; filed an inventory, and made settlements, respectively, on the 19th of May, 1868, on the 7th of July, 1869, on the 14th of April, 1870, and the 5th of July, 1871, all of which were approved and confirmed.

"Subsequently, on the 15th of April, 1875, he filed a fifth settlement, in lieu of the four former ones, purporting to render an account and statement of all his administration down to that time, from the beginning. which was also duly approved and confirmed." Plaintiffs allege in their bill that these settlements are fraudulent, and to show this make thirty-one specific charges of facts which they insist indicate fraud.

1. ADMIN- The opinion delivered by this court in this cause when it ISTRA- TION: was here for the first time, which is reported in the 42 Settle- ment of es- *Ark.*, 186, lays down the rule by which courts of equity tates: In- terference are governed when they interfere in the settlements of equity. of administrators to correct fraud or errors, or relieve against accident or mistake. It is unnecessary to add to what has been said upon that subject in that opinion, except to repeat the rule so often announced by this court: A court of equity will not interfere with the proceedings in the probate courts for the settlement of estates to correct mere errors or irregularities, unless they are sufficiently gross to raise the presumption of fraud. *Ringold v. Stone*, 20 *Ark.*, 526; *Osborne v. Graham*, 30 *Ark.*, 66; *West v. Waddill*, 33 *Ark.*, 575; *Reinhardt v. Gartrell*, *Id.*, 727; *Mock v. Pleasants*, 34 *Ark.*, 63; *Jones v. Graham*, 36 *Ark.*, 383; *Nathan v. Lehman, Abraham & Co.*, 39 *Ark.*, 256; *Trimble v. Jones*, 40 *Ark.*,

393; *McLeod v. Griffiths*, 45 *Ark.*, 505; *Hawkins v. Layne*, 48 *Ark.*, 544.

Plaintiffs' first charge of fraud is, the administrator charged himself in his settlements with interest at ten per centum per annum on $3,487 from March 18th, 1868, when he should have charged it from March 19th, 1867, and thereby defrauded the estate of Dickens out of $348.71.

The thirteenth is, the administrator received $6,957.18, and failed to charge himself with interest thereon from the time he received it, and thereby defrauded the estate of $1,158.25.

The evidence does not sustain either of these charges. In the first, the $3,487 was the amount of a note which did not bear interest until the 18th of March, 1868, when it was due. In the latter case the administrator charged himself with ten per centum per annum interest on the money from the time he received it to the date of the settlement in which it is charged.

But Jacoway insists that he did not use the $6,957.18, and through mistake charged himself with $764.72 interest thereon, when he was not chargeable with interest, and that this error against him should be corrected. The evidence does not show that he charged himself with it through mistake of fact. His settlement shows the dates of the receipt of it, and that he charged himself with interest thereon from the time he received it to the date of his settlement. If there was any mistake in this, it was a mistake of law and not of fact. He received of this money $2,786.25 on the 11th of July, 1873, $1,035 on the first of July, 1873, and $3,135.93, the remainder, on the 20th of December, 1874. He made no report of the collections of it to the probate court until the 15th of April, 1875, the date of the settlement in which he charges himself with it, but elected to hold the money and pay interest thereon. It was his duty to have

2. SAME: Administrator's accounts: Liability for interest.

reported the collection of it to the probate court as promptly as he could, so that the court could have directed that it be loaned out or used in the payment of the debts allowed against the estate. Had he done so, the estate would have been benefitted by the interest accrued on the same or by the saving of interest on the claims paid. Having injured the estate by his inaction he did right in charging himself with interest, and the charge should not be changed.

The sixth charge of fraud is, Jacoway charged himself with $4,132.59 as the amount due on the 10 per cent. notes reported worthless, when in fact the amount due on them was $4,556.23, and thereby defrauded the estate of $423.64. The fifteenth charge is Jacoway credited himself with $5,607.31, as the amount of worthless notes when the true amount was $4,470.87, and thereby defrauded the estate of $836.44.

The eighth charge is, Jacoway, on the 1st of January, 1868, sold some notes of the estate for $10.35, and fraudulently failed to charge himself with interest on the amount of the sale, amounting to $7.48.

3. SAME:
*Same.*
Erron-
eous calcu-
lation ac-
cepted by
the court.

Jacoway admits that he erroneously charged himself with $4,132.59, the amount due on the 10 per cent. notes reported as worthless, when he should have charged himself with $4,556.33, but says it was an unintentional error and would have been cheerfully corrected in the probate court had his attention been called to it. He admits that he took an excessive credit of $589.30 for worthless claims, through mistake; and that through an oversight he failed to charge himself with $7.48 on the $10.85 received on account of sales. He says these errors were mistakes made by him, and that he is willing to correct them, but insists they should be corrected in the probate court.

It appears that he made calculations of the amount due on these claims, and made statements in his settlements and

Dyer v. Jacoway.

otherwise showing the amount of the principal of each of them, and the interest due thereon and the sum total of the amounts due on all, and that the probate court accepted his calculation as correct. This amounted to a misrepresentation to the probate court as to the amount due, and having been acted on and accepted as correct by the probate court, amounted to a fraud on the court, and on the creditors and others interested in the estate. Jacoway, admitting that his failure to charge and credit himself with the proper amounts for worthlsss claims and to charge himself with $7.48 was a mistake of his own, and manifesting a desire that they should be corrected, he should be charged with the correct amount of the worthless claims belonging to the estate, and credited therewith, and charged with the $7.48; and the correction should be made in this cause.

The ninth charge is, Jacoway included in his inventory of the estate six bales of cotton of the value of $750, and has never accounted for them. In explanation of this omission the evidence shows that the last crop raised by Dickens was on shares with the freedmen on his place, under an agreement that the freedmen should have one-half of the crops raised; that Dickens sold, substantially, all the cotton and applied the proceeds to his own use, only leaving the six bales of cotton, a small part of the cotton crop, unsold; that the six bales of cotton and 1,265 bushels of corn and seven stacks of hay and fodder, of the crop of 1866, were inventoried by Jacoway; that it is shown in the inventory that one-half of the corn, fodder and hay were claimed by the freedmen; that after it was inventoried complaint was made to the agent of the Freedman's Bureau; that he seized the six bales of cotton and one-half of the corn, fodder and hay to satisfy the demands of the freedmen; and that Jacoway realized nothing from the property seized. He testified, from investigation he became satisfied they were entitled to it.

15

There was no competent evidence to show that Jacoway acted fraudulently or that there was any inducement for him to betray his trust. Accepting the evidence as true we think the freedmen were entitled to the portion of the crop seized by the agent of the Freedman's Bureau; and that Jacoway should not be held to account for the six bales.

Jacoway charged himself in his settlements with the appraised value of the corn, fodder and hay and interest thereon, but never credited himself with the half of it which was seized by the agent of the Freedmen's Bureau. He insists he should be credited with the portion so seized. It is obvious that this failure to credit himself was unintentional, and that he should be credited with the appraisement of the corn, hay and fodder seized and the interests thereon with which he stands charged. This should be done in this case on the principle, that he who seeks equity should do equity, if upon no other. *Trimble v. James*, 40 *Ark.*, 407.

The second charge of fraud is, Jacoway delivered to the widow of Dickens, as a part of her dower, $398 worth of personal property, at its appraised value, and fraudulently failed to charge himself with it; and the third charge is, he failed to charge himself with interest on the last amount. The evidence is, the property delivered to the widow consisted of a gin stand and belt of the appraised value of $308, and one shot gun, two cows and calves, and two pistols, of the aggregate appraised value of $90; that Jacoway sold the gin stand and belt to Hilb and Jessnp for $308 and at the same time sold to them other property and took their note for the property sold and charged himself with the note; that afterward, when the widow demanded them as part of her dower, the gin stand and belt were delivered to her by Hilb and Jessup, at the request of Jacoway, and they were credited on their note with their appraised value; and that he, Jacoway, never charged himself with the other personal

property delivered to her at the same time. Jacoway admits that he unintentionally failed to charged himself with the gun, pistol, and cattle, and that he has credited himself therewith in his settlement. This is a fraud upon the estate of Dickens. Jacoway should be charged with the ninety dollars, and so much interest thereon as he has credited himself with in his settlements.

The tenth charge is, Jacoway inventoried two judgments in favor of Samuel Dickens, one against H. Bernard and the other against B. J. Jacoway, and has never accounted for them. It does not appear that the judgment against Bernard was of any value, or that any part of it has been collected, but Jacoway admits that he collected on the judgment against B. J. Jacoway, on the third day of July, 1871, the sum of $167.83, and has never accounted for it. This is also a fraud upon the estate. Jacoway should be charged with it and interest thereon from the third of July, 1871.

The eleventh, eighteenth, twenty-third, twenty-sixth, and twenty-eighth charges are, Jacoway is credited in his settlements with various sums for which he is not entitled to credit. It is unnecessary to state more definitely what these credits are. There is no evidence sufficient to show that Jacoway practiced any fraud upon the court, in obtaining them, by misrepresentation or withholding information, or that there was any mistake of fact committed in allowing them. The burden of showing that these credits were the result of fraud, mistake or accident rested on the appellees, the plaintiffs; and inasmuch as they have not made the proof they will be permitted to stand.

The thirtieth charge is, Jacoway was credited with $18.60, the amount of the principle and interest due on a note against D. W. McKenzie, belonging to the estate of Dickens, the same being returned and credited as a worthless claim, when he had collected it. As to the collection of this note the

Dyer v. Jacoway.

evidence is conflicting, but it is clearly proven that Jacoway, in his capacity of administrator, collected of McKenzie, on the 9th of May, 1868, the sum of thirty dollars, and that he has failed to charge himself with this amount.   He should be charged with it and interest thereon from the time it was paid.

4. SAME: Allowance in administrator's favor of claim barred by the statute of limitations.

The twenty-ninth charge is, Jacoway allowed a claim against the estate of Dickens in favor of himself and one Hollowell for $560, that was barred by the statute of limitations.   This amounts to nothing.   The statute governing the allowance of claims in favor of executors and administrators against their testators or intestates says:   " An executor or administrator may establish any demand he may have against his testator or intestate, by presenting and proving the same to the satisfaction of the court; and the court shall not allow any claim in favor of an executor or administrator agains this testator or intestate, *unless on legal and competent testimony* ; and the same affidavit shall be required of an executor or administrator as is required of other claimants." From this statute it is evident that an administrator cannot allow a claim in his favor against his intestate, but in order to secure an allowance of the same he must verify it by his own affidavit, present it, and prove it to the satisfaction of the probate court by competent evidence.   Being an administaator, occupying a place of trust, it is his duty to act in good faith, and protect the estate by placing the probate court in possession of all the material facts within his knowledge or information, which would be competent evidence and calculated to influence the judgment of the court.   Failing in this and thereby securing the allowance of his claim he would be guilty of fraud.   But notwithstanding it is his duty to prove his claim in the manner indicated, an allowance in his favor will not be set aside for mere errors or irregularities.   Like all other judgments it may be set aside

in a court of equity for fraud committed in obtaining it.
But it will not be sufficient to set it aside to prove that the
claim was barred by the statute of limitations.   If it was the
duty of the court to have disallowed it because it was barred
and the evidence showed that it was, the court only com-
mitted an error in allowing it, which cannot be reached or
corrected in a chancery proceeding.   *Nathan v. Lehman,
Abraham & Co.,* 39 *Ark.,* 256 ; *Jones v. Graham,* 36 *Ark.,* 390.

In this case it appears that the claim of Jacoway and Hol-
lowell was presented to the probate court and allowed and
classed.   In the absence of proof it is presumed that the court
acted in pursuance of law and that the allowance was not
obtained by fraud, accident, or mistake, and should not be
set aside or modified.

The fourth, fifth, seventh, twelfth, fourteenth, sixteenth,
seventeenth, nineteenth, twentieth, twenty-first, twenty-
second, twenty-fourth, twenty-fifth, twenty-seventh, and
thirty-first charges are  not insisted on here and are consid-
ered abandoned.

The decree of the court below is, therefore, reversed, and
this cause is remanded with directions to the court to sur-
charge and falsify the settlement of Jacoway in accordance
with this opinion, and to render such judgment for the costs
of the court below as to the court may seem equitable, and
for other proceedings not inconsistent with this opinion.