## CAMPBELL v. CLARK.

## Opinion delivered February 13, 1897.

GUARDIAN'S ACCOUNT — SURCHARGING. — For a guardian to obtain credits in his final settlement with the probate court for sums not expended by him for the benefit of the ward is such a fraud as will justify a court of equity in restating and correcting the settlement.

GUARDIAN AND WARD—WARD'S SUPPORT.—As a rule, where a ward lives with her guardian as a member of his family, receiving board and clothing and rendering the ordinary household services required by parents of their children, such services will be presumed, in the absence of a clear showing to the contrary, to be a sufficient compensation for the ward's support.

SAME—INVADING PRINCIPAL OF ESTATE.—A guardian is not entitled to an allowance in excess of the income of his ward's estate without previously obtaining an order of the probate court therefor, under Sand. & H. Dig., § 3604, providing that without the direction of the probate court, "the guardian shall not be allowed, in any case, for the maintenance and education of the ward, more than the clear income of the estate."

SAME—INTEREST.—A guardian who pays out for clothing and other necessaries of his ward more than he receives credit for should not be charged with more than six per cent. interest on the amount found to be due from him.

Appeal from Woodruff Circuit Court in Chancery.

GRANT GREEN, JR., Judge.

STATEMENT BY THE COURT.

Suit in equity to surcharge and correct final settlement made by a guardian, which settlement had been confirmed by the probate court.

James H. Campbell, guardian of Lucy Clark, a minor, filed in October, 1888, his final settlement of such guardianship. In said settlement he charged himself with the amount on hand November 1, 1884, date of the last preceding settlement, to wit: $498.90, with interest on said sum at rate of six per cent. from that date. He asked

and obtained a credit of $150 dollars for each of the years 1885, 1886, 1887 and 1888, as an allowance for board and clothes furnished by him to his ward, making a total credit of $600. The credits thus allowed were more than sufficient to absorb the whole estate of the ward, and left a balance due the guardian of $26.35.

It was alleged by Lucy Clark in her complaint that this annual credit of $150 was greatly in excess of the income of her estate, and that the same had never been paid out or expended by her guardian for her benefit, and that these facts were fraudulently concealed from the probate court by said guardian. The circuit court found that these allegations were sustained by the evidence, and ordered that the settlement of said guardian be surcharged and restated accordingly. From this judgment the guardian appealed.

*N. W. Norton* for appellant.

The order of allowance is conclusive where no abuse is shown. Sand. & H. Dig., secs. 219, 3604; 30 Ark. 520; *ib.* 312. The allowance of $150 and the rate of interest were matters ruled on by the probate court, and hence not reviewable in chancery. 42 Ark. 191; 51 *id.* 1; 43 *id.* 171; 8 *id.* 268; 20 *id.* 527; 34 *id.* 64; 36 *id.* 383. The confirmed settlements of the probate court cannot be disturbed in chancery, except for fraud or other recognized ground of chancery jurisdiction. 40 Ark. 219. There was no fraud here.

*J. N. Cypert* for appellee.

A failure to charge interest is a fraud, as is the charging an allowance of $150 per annum when no such sum was expended. No more than the income of the ward can be expended in maintenance. Sand. & H. Dig., sec. 3604.

Riddick, J., (after stating the facts.) The contention in this case is that the guardian fraudulently

obtained a credit of $150 for each of the four years covered by his final settlement.

<span style="float:left">As to surcharging guardian's account.</span> The circuit court found, not only that these credits exceeded the income of the ward's estate, but also that the guardian had never expended the sums for which he obtained credit on his final settlement. The evidence does not in our opinion show that the guardian induced the probate court to approve the settlement complained of by a statement that such court had previously authorized him to expend for the maintenance of his ward sums in excess of the income from her estate. The question we must consider therefore is whether the evidence supports the finding of the chancellor that the guardian obtained credits in his final settlement for sums not expended by him for the benefit of the ward, for, if he did, this would be such a fraud as would justify a court of chancery in restating and correcting such settlement. *Dyer* v. *Jacoway*, 42 Ark. 186; *Jones* v. *Graham*, 36 Ark. 383; *Reinhardt* v. *Gartrell*, 33 *ib.* 727.

<span style="float:left">As to ward's support.</span> The appellee, Lucy Clark, during the years that her guardian was allowed these credits for her board and clothing, was living with Mrs. Hopkins, a sister of the guardian. Neither Mrs. Hopkins nor appellant testifies that she made any charge for board of appellee, or that anything was paid by appellant for such board. It is true, they both testify that Mrs. Hopkins procured her supplies from the store of W. P. Campbell & Bro., of which firm appellant was a member; but they do not testify that these supplies were furnished as a consideration for the board of appellee. On the contrary, the statement of Mrs. Hopkins that she "never made out any bill or charge for board," and her further statement that she "always felt that she was doing a great deal for the child," would lead to the inference that she never expected pay for such board. The appellee testified that, while living with Mrs. Hopkins, she worked

the same as a servant, attending to household duties generally, and that the value of her services during this time was sufficient to pay for her board and clothing. Counsel for appellant contends that the services she rendered were only such household duties as prudent parents require their daughters to learn and do, and that, as her home was with a family supported from the guardian's store, it was the same as if she had lived with the guardian. But the supplies were furnished Mrs. Hopkins, not by the guardian, but by a firm of which he was a member, and it is not shown that they were furnished as a consideration for the board of the ward, or that Mrs. Hopkins did not pay for these supplies in some other way. If, however, we should adopt the view of counsel that the ward during these years must be considered as a member of the guardian's family, he would be in no better situation; for the rule is, when the ward lives with the guardian as a member of his family, receiving support on the one hand and on the other rendering the ordinary household services required by parents of their children, that such services will be presumed, in the absence of a clear showing to the contrary, to be a sufficient compensation for the board of the ward. In such a case, the relation is said to be *quasi* parental, and the guardian cannot charge the estate of the ward for board, nor the ward recover for services rendered. *Otis* v. *Hall*, 117 N. Y. 131, 22 N. E. 563; *Doan* v. *Dow*, 8 Ind. App. 324, 35 N. E. 709; *Marquess* v. *La Baw*, 82 Ind. 550; *Folger* v. *Heidel*, 60 Mo. 285; *Horton's Appeal*, 94 Pa. St. 62; Tiffany's Domestic Relations, 313.

This final settlement of appellant covers a period from the eleventh to the fifteenth year of the ward's age. It is not unreasonable to believe that a girl of that age might earn her own board. Her estate consisted of only a few hundred dollars in money, and it was the duty of her

Right of guardian to invade the principal of ward's estate.

guardian to have endeavored to find her a home where she could earn her board, thus avoiding the necessity of invading the principal of her small estate. If he failed in this, he should have submitted the matter to the probate court, and allowed it to determine whether it was necessary to expend a portion of the principal of the estate for the maintenance of the ward, and to direct the expenditure, as required by our statute. Sand. & H. Dig. § 3604. So far as this statute forbids a guardian from invading the principal of the ward's estate without first obtaining the order of the court having probate jurisdiction, it is only declaratory of existing law, it having been long settled that no guardian has the right to expend more than the income of his ward's estate without proper judicial sanction, though the court, before the passage of this act, could approve such use by the guardian, without previous application for leave, where the court would have authorized it if application had been made. *In re Bostwick*, 4 Johns. Ch. 100; *Villard* v. *Robert*, 2 Strobh. Eq. (S. C.) 40; Schouler's Dom. Rel. (5th Ed.) § 338, and cases cited; Tiffany's Dom. Rel. § 164, and cases cited.

But on this point the language of our statute is direct and positive—that unless the direction of the probate court is obtained to expend more than the income of the ward's estate, "the guardian shall not be allowed in any case for the maintenance and education of the ward more than the clear income of the estate." Sand. & H. Dig. § 3604. The language of this statute could not well be made stronger than it is, and we are of the opinion that it was intended to be, and is, mandatory. This statute, in our opinion, takes from the probate court the discretion to approve the expenditures of a guardian for the maintenance and education of his ward, so far as they exceed the income of the ward's estate, unless such expenditures have been made under the

direction of the court. *Boyd* v. *Hawkins*, 60 Miss. 277; *Ex parte George*, 63 Miss. 143; *Jones* v. *Parker*, 67 Tex. 76.

The appellant did not submit such matters to the probate court, nor obtain its direction for such expenditures, but proceeded to deal with the estate of his ward in a very loose and irregular way. He invested the funds of his ward in his own business, filed no annual settlement, and seems to have kept no account against his ward. His first settlement was filed at the expiration of two years from the commencement of his guardianship, and shows that he was then allowed credit for $375.75 for maintenance of his ward, leaving a balance on hand of $498.90. Four years later, he filed his second and final settlement, showing that the whole estate of his ward, principal and interest, had been absorbed. In this last settlement, covering four years, he is credited each year with $150. He filed no vouchers or receipts of any kind, but asked and obtained this allowance as a lump sum for board, clothes and all expenses. While it is probable that no actual fraud was intended, yet this method of dealing with the estate of a ward cannot be approved; for, when no accounts of expenditures are kept, and no vouchers filed, it is difficult, if not impossible, for either the probate court or the ward, when she arrives at age, to tell in what way or for what purpose the estate has been expended. If such methods of keeping accounts were allowed, the door would be open for the perpetration of all manner of frauds against the estates of minors. Under the evidence in this case, we cannot disturb the findings of the chancellor that nothing was paid out for the board of the ward. Not only the fact heretofore noticed, that neither appellant or Mrs. Hopkins directly testify that anything was paid for board, but the further circumstance that no agreement was made with Mrs. Hopkins

for payment of board, that the ward was required to perform household services, that this charge for board was made after the lapse of several years, all tend to support the finding of the court in this regard, and it must stand.

The result of our conclusion that the circuit court was right in finding that this allowance of $150 was based in part on a fraudulent claim for board is to set aside the whole allowance, for, as the appellant filed with his settlement neither itemized account or voucher, we have no means of ascertaining what portion of the $150 was allowed for board, and what for other expenditures. The circuit court was therefore justified in setting the allowance of the probate court aside, and restating the account, by giving such credits only as the probate court should have allowed in the first instance. As the guardian never procured an order from the probate court directing him to invade the principal of his ward's estate, the court, under the mandatory provision of our statute, was right in holding that his credits could not exceed the income of the estate. It was shown that the guardian expended for clothing and other necessaries of ward more than the income of the estate, and the circuit court correctly charged him with the principal of the ward's estate shown to be in his hands at date of his first settlement, and allowed him the interest thereon to cover his expenditures for the ward.

Liability of guardian for interest. The probate court charged the guardian with six per cent. interest for use of funds in his hands, and we see no reason to disturb that ruling. The guardian paid out for the use of the ward much more than he received credit for, and he should not, we think, be charged with more than six per cent. on amount found due from him.

The decree of the circuit court will be modified to the extent that only six per cent. interest will be charged the guardian on sums found due from him at date of

his final settlement. With this modification, the decree of the circuit court will be affirmed, and a decree entered here against appellant for the sum of $493, found due by circuit court, with six per cent. interest thereon from October 28, 1888, date of his final settlement as guardian.