### ALCORN v. ALCORN.

Opinion delivered March 2, 1931.

C. T. *Carpenter*, for appellant.

*Thomas W. Hughes* and *Allen Hughes*, for appellee.

SMITH, J., (after stating the facts). Many cases cited in the brief of counsel for appellee and cross-appellant support the statement of law found in 46 C. J., page 1261, at § 38 of the chapter on Parent and Child, to the effect that a father who is able to do so is bound to maintain and educate his children at his own expense, although the children may have property of their own sufficient for the purpose. A number of cases are cited in the note to the text which support it. This duty is said, in 20 R. C. L., page 622, at § 30 of the chapter on Parent and Child, to be correlative to the father's right to the custody, control and earnings of his minor child.

The first question of fact appears, therefore, to be whether Mr. Alcorn possessed the means personally to support and educate his son. There was no exception to the administrator's settlement putting this question specifically in issue, but enough testimony was offered on this question to make it appear that he was not, and the court below so specifically found. Mr. Alcorn testified that he was not, and there was no contradiction of this testimony except as hereinafter stated.

Mr. Alcorn was entitled, as tenant by the curtesy, to appropriate to his own use the rent of both the Arkansas farm and the Memphis home. Mrs. Alcorn died before

the passage of act 149 of the Acts of 1925, page 441, abolishing curtesy in this State. *Day* v. *Burgess,* 139 Tenn. 559, 202 S. W. 911; *Schaffler* v. *Handworker,* 152 Tenn. 329, 278 S. W. 967. The amount of income from this property is unimportant, therefore, except for the purpose of determining whether Mr. Alcorn had the means from this or any other source to support himself and to support and educate his son.

Mr. Alcorn testified that he did not have, and there is no testimony to the contrary with this exception. He testified that after the death of his wife he rented out the residence in Memphis, and that he received from $75 to $85 per month as rent. But he also testified that the house was not always rented, nor was he always able to collect the rent when he had a tenant. He was, of course, under the duty of paying the taxes, and he was also required to maintain repairs to preserve the rental value of the property, and may also have paid insurance and have incurred other expense, although, as we have said, this feature of the case was not fully developed, and no attempt was made to show that Mr. Alcorn had not performed his duty in these respects.

The farm in Arkansas had been rented for the year in which Mrs. Alcorn died for $1,500, of which $500 was paid in advance and $400 additional during Mrs. Alcorn's last illness, leaving only $600 due as rent when she died. Mr. Alcorn testified that about $140 or $160 of this balance was not collected, and that out of the balance actually collected he paid a note for $250 signed by both himself and his wife, so that the net rent collected that year amounted to only about $210 after Mrs. Alcorn's death, with no account taken of taxes, repairs, and expenses of that character. He further testified that the rental value of the farm diminished, and we gather from his testimony that the farm has been practically abandoned and some of the houses thereon nailed up, and that he had no sufficient means to support and educate his son, and that he is now attempting in a small way to farm in Mississippi

The testimony appears to us to be of such a character as to be insufficient to support a finding that Mr. Alcorn possessed the personal means to support and educate his son, and, this being true, authority existed under the law to use such portions of the minor's estate as were necessary for his support and education.

The law is thoroughly well settled that the administrator, as such, has nothing to do with the support and education of the minor children of his intestate, and, if nothing more appeared in this case than that the administrator had done so, then he would have no right to make this charge against the estate of his intestate. *Stuckey* v. *Stephens,* 115 Ark. 572, 171 S. W. 908, Ann. Cas. 1917A, 133; *Campbell* v. *Clark,* 63 Ark. 450, 39 S. W. 262.

It appears, however, that the administrator applied to and received from the probate court authority to expend money in excess of the minor's income for his support and education. This order was, no doubt, made pursuant to the authority conferred by § 92, Crawford & Moses' Digest, which reads as follows: "In all cases where minors when they arrive at their majority will have any estate due them, but have no guardian, the court having jurisdiction of the matter may, at its discretion, make an order directing the administrator or other person having control of the estate due, or that will be due, to such minor, to pay over, from time to time, such amount as the court may think proper for the support and education of such minor." This statute does not contemplate that an administrator may be authorized to convert a minor's estate into cash and make such use of it as he thinks proper for the support and education of the minor, and, although the order of the probate court, quoted above, directs the administrator to apply the proceeds of the sale of the stock, "or so much thereof as is really necessary, to maintenance and education of said minor," the court did not, and could not, abandon its control over the estate. The administrator misinterpreted the effect of this order. He should, from time to time, have received

orders from the probate court as to what expenditures were proper. Had he done so, he would have been protected. Failing to obtain this authorization, he made expenditures for the purposes stated at his peril and subject to the right of the court to review them when he did make a report thereof. Neither an administrator nor a guardian may expend a minor's estate in this manner. The hand of restraint should be laid upon the minor, and the improvidence into which the minor's inexperience and youth might lead him be averted.

We are therefore of the opinion that, although this young man has no guardian, but does have a remainder interest in both the Arkansas and Memphis property, subject to his father's curtesy, his expenditures, even for the purpose of maintenance and education, should have been controlled and made under the direction of the court, and made in conformity to his station in life and the value of his estate.

As there was no specific authorization of these expenditures, they were, as we have said, made at the administrator's peril, and the merit of each of the items for which the administrator asks credit is now subject to review. The court below did not make this review, for the reason that in the opinion of the court none of them were proper credits.

We do not review the various items included in the settlement, as the testimony concerning them has not been fully developed, and the matter should first be passed upon by the court below after hearing such additional testimony as may be thought relevant and necessary. We merely say, for the guidance of the court below, that, in passing upon the question discussed, credit should be allowed only for such expenditures as were in keeping with the young man's station in life and the value of the estate.

We may say also, in this connection, that the expenses of the young man should be considered with reference to the school which he attended, rather than some other

school which may have been cheaper, for the reason that he had been placed in this school in the lifetime of his mother from whom his inheritance comes.

Upon the remand of the case we are of the opinion that the following legal principles should be applied in determining whether the administrator should be charged interest on the money which came to his hands.

If it be found, as the testimony before us appears to indicate, although the fact is not as fully developed as it may be, that the administrator placed the money to his credit as administrator and made no personal use of it, he should not be charged with interest on it. In the case of *Jacoway v. Dyer,* 50 Ark. 217, 6 S. W. 902, it was held to be the duty of an administrator to report collections promptly, to the end that demands against the estate might be paid, and that when he failed to do so interest would be charged. Here, however, there were no demands to be paid, and, if the administrator was holding the money intact except as expenditures required its disbursement, the balance to be paid over to the young man when he arrived at age, and he was eighteen years of age when his mother died, we think no interest should be charged. Sections 71 and 72, Crawford & Moses' Digest.

As to the funeral expenses, it may be said that this question was considered in the case of *Beverly v. Nance,* 145 Ark. 589, 224 S. W. 956. The facts there were that an item of this character was presented to the probate court, approved, allowed and classified, but the husband of the deceased, who was also the administrator of her estate, paid this and other claims with his personal funds, and, in disallowing credit for this item paid by the husband with his personal funds, we said: ''Incident to the duty of a husband to maintain his wife is the corresponding duty of paying for her reasonable burial expenses.''

Without review of the authorities on the subject, we follow the rule announced in the Beverly case, *supra,* that, if the husband pays the funeral expenses, he cannot recover them from his wife's estate. But it is to be re-

membered that in the Beverly case the facts were that the husband was not only able to pay the funeral expenses of his wife, but had done so with his own funds, and his attempt was to be reimbursed. Here the testimony appears to be undisputed that the administrator not only did not pay the funeral expenses with his own funds, but was unable to do so. We have here the specific finding made by the court below that "At the time of Mrs. Alcorn's death her husband had no property of his own, and there was little cash on hand, and for that reason the court finds that the administrator was entitled to pay the funeral expenses out of the wife's estate." Such facts entitle the husband to charge the funeral expenses to the estate.

The judgment of the court below will therefore be reversed, and the cause remanded, with directions to restate the administrator's account in accordance with the principles herein announced.