Davey LEE *v.* Patricia LEE
and Office of Child Support Enforcement

CA 05-1141                                                    233 S.W.3d 698

Court of Appeals of Arkansas
Opinion delivered April 12, 2006

*Wm. C. Plouffe, Jr.*, for appellant/cross-appellee.

*Joanie M. Ozment*, for appellees/cross-appellant.

SAM BIRD, Judge. Appellant Davey Lee appeals from the judgment of the Union County Circuit Court holding him in contempt for nonpayment of child support, granting the Office of Child Support Enforcement (OCSE) judgment for $7,132 in unpaid child support, and setting his support obligation at $40 per week. The $40-per-week sum represented a downward deviation from the $72-per-week sum provided by application of the child-support chart. Appellant raises five points for reversal. OCSE cross-appeals from the trial court's decision to deviate downward from the child-support chart. We affirm on both direct appeal and cross-appeal.

Appellant and appellee Patricia Lee were divorced by decree of the Union County Chancery Court entered on July 25, 2000. The decree awarded Patricia custody of the parties' two minor children and ordered appellant to pay child support of $58 per week.

In October 2001, the Lees' minor children were injured in an explosion at Patricia's home. The Lees filed a suit seeking damages for the children in the Union County Circuit Court. The case was settled, and a special-needs trust was created for the children with Liberty Bank of Arkansas serving as trustee.

OCSE intervened in the divorce case and filed a motion seeking to modify appellant's support obligation and to hold appellant in contempt for nonpayment of support. Appellant denied the material allegation of the petition. Prior to trial, appellant issued a subpoena to the bank seeking "financial account and/or trust records for the last three years concerning Patricia A. Lee. . . ." The bank filed a motion to quash the subpoena, alleging that the records had been ordered sealed in the earlier tort case. Appellant asserted that the motion to quash should be denied because the order sealing the records did not extend to the records sought.

After a hearing, the trial court granted the motion to quash by order entered on February 9, 2005. The trial court found that the purpose of the subpoena was to determine the assets and income available to the minor children and whether the bank had provided appellant with a complete list of all income or payments received by Patricia or the minor children. The court concluded that appellant had received all information necessary for the court to make a determination as to whether there should be a deviation from the child-support chart.

Appellant filed a "Motion for Reconsideration/New Trial and Motion for Findings of Fact and Conclusions of Law" on February 22, 2005. The motion sought findings of fact and conclusions of law regarding the following: the reasons that the records were sealed; whether the sealing of the records applied to records subsequently created by the bank for purposes of administering the special-needs trust; why the release of subsequently created documents would violate the order sealing the records; how the bank met its burden of showing good cause to quash the subpoena; how the records were not relevant to a requested deviation from the child-support chart; and how the release of the records would harm the special-needs trust. On March 16, 2005, the trial court denied the motion as being without merit and as untimely filed under Ark. R. Civ. P. 59(b).

At trial, appellant admitted that he had an arrearage of $12,132 but stated that he and Patricia had an agreement whereby he would not have to pay child support. He said that she told him that he "would not have to worry about child support anymore." He identified a document, signed by Patricia, requesting that the child-support case with OCSE be closed. Appellant stated that he was working, earning $7 per hour for a forty-hour week. He stated that he had a wife and two children, ages two and four, living at home with him. He also admitted receiving $250,000 as his share of the settlement from the accident involving his older children but stated that he did not put that money in the bank. He added that $150,000 in cash from that settlement, a vehicle, and a motorcycle were stolen from his home.

According to appellant, he paid $5,000 for food and clothing for the children. He asserted that the children were removed from Patricia's custody in 2002 due to her inability to care for them after the explosion. Appellant also claimed that he should not have to pay support for the period the children were not in Patricia's custody. He said that, in addition to the $5,000 previously mentioned, he paid more than $2,000 during the fifteen-month period the children were in foster care. However, he did not have receipts for these payments. He said that the children received $1,500 per month in disability from social security and $6,000 per month from the special-needs trust. According to appellant, the trust was worth approximately $1 million and paid for all of the household expenses. He added that the children's total estate was valued between $15 to $17 million. He stated that he did not think it was

fair for him and his new family to suffer by his paying child support when the children's needs were met by the trust.

After the hearing, the trial court announced its findings from the bench and found that appellant was previously ordered to pay child support of $58 per week and that appellant admitted an arrearage of $12,132. The court gave appellant credit for $5,000 in previous payments. This resulted in a net judgment of $7,132. The trial court found that appellant was not entitled to credit for payments from the special-needs trust because it was not created with funds provided by appellant. The trial court found, based on the child-support chart, that appellant should pay $72 per week in current support. Because the children were receiving $1,500 per month from social security and $6,000 per month from the special-needs trust, the court concluded that a deviation from the child support was warranted and that such a deviation would not adversely affect the children. In deciding to deviate from the chart, the court also noted that appellant had two other biological children residing with him. The court then set child support at $40 per week, plus $8 per week on the arrearage. An order based on the trial court's oral findings was entered on July 1, 2005. Appellant filed a timely notice of appeal, and OCSE filed a timely notice of cross-appeal.

Appellant raises five points on appeal: (1) that the trial court erred when it held that the income from the special-needs trust would not be credited against appellant's support obligation; (2) that the trial court erred in not considering Patricia Lee's request to close her child-support case and that she did not have custody of the minor children for an extended period of time, and that appellant detrimentally relied on Patricia Lee's request in stopping child support; (3) that the trial court erred in setting appellant's support obligation at $40 per week; (4) that the trial court erred in quashing a subpoena for the records of the trust from the bank; and (5) that the trial court erred when it denied as untimely appellant's motion seeking findings of fact as to the trial court's decision to grant the bank's motion to quash. On cross-appeal, OCSE argues that the trial court erred in deviating downward from the child-support chart.

Child-support cases are reviewed de novo on the record. *Paschal v. Paschal*, 82 Ark. App. 455, 117 S.W.3d 650 (2003). It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). This income may differ from income for tax

purposes. *See Brown v. Brown,* 76 Ark. App. 494, 68 S.W.3d 316 (2002). As a rule, when the amount of child support is at issue, the appellate court will not reverse the trial judge absent an abuse of discretion. *McWhorter v. McWhorter,* 346 Ark. 475, 58 S.W.3d 840 (2001); *Paschal, supra.*

In setting the amount of child support that a noncustodial parent must pay, reference to the most recent child-support chart is mandatory. *Thompson v. Thompson,* 63 Ark. App. 89, 974 S.W.2d 494 (1998). The family-support chart is more accurately identified as Section VII of Supreme Court Administrative Order 10, *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines,* 347 Ark. Appx. 1064 (2002). Administrative Order Number 10 sets out the definition of income for child-support purposes and the manner of calculation of support. It also lists factors that the court should consider when determining support at variance to the chart. Although the court must consider the chart, it does not have to use the chart amount if the circumstances of the parties indicate that another amount would be more appropriate. *Kelly v. Kelly,* 341 Ark. 596, 19 S.W.3d 1 (2000); *Stewart v. Winfrey,* 308 Ark. 277, 824 S.W.2d 373 (1992); *see also* Ark. Code Ann. § 9-14-106 (2002).

Appellant first argues that the trial court erred in not crediting the amount that the children receive from the special-needs trust against his support obligation. In *Hinton v. Hinton,* 211 Ark. 159, 199 S.W.2d 591 (1947), the supreme court held that military allotments assigned to a child could be credited toward the father's child-support obligation. In *Cash v. Cash,* 234 Ark. 603, 353 S.W.2d 348 (1962), the court held that a father was entitled to credit social security retirement benefits received by the child against the father's child-support payments. In so holding, the court observed that such benefits were not gratuitous but earned, and the court was persuaded that the equities tipped in favor of allowing credit to the father under the circumstances of the case.[1] However, in *Thompson v. Thompson,* 254 Ark. 881, 496 S.W.2d 425 (1973), the supreme court held that college educational benefits for a disabled veteran's children represented a specialty item to be used only under specified circumstances and could not be credited toward the veteran's child-support payments. Other

---

[1] *See also, e.g., Office of Child Support Enforcement v. Harris,* 87 Ark. App. 59, 185 S.W.3d 120 (2004); *Davis v. Davis,* 79 Ark. App. 178, 84 S.W.3d 447 (2002); *Cantrell v. Cantrell,* 10 Ark. App. 357, 664 S.W.2d 493 (1984).

courts have held that a child's receipt of social security benefits would not be considered in determining the basic child-support obligation because they are not income to the obligor; however, the trial court may consider such benefits in deciding whether to deviate from the guidelines. *See Ouellette v. Ouellette*, 687 A.2d 242 (Me. 1996); *Drummond v. State ex rel. Drummond*, 350 Md. 502, 714 A.2d 163 (1998).

Here, appellant essentially is asking that the children be ordered to support themselves from their own funds instead of his being required to do so. The funds were not earned by appellant and are not a substitute for his earnings because of a disability. They are the result of an award of damages for the benefit of the children, who were involved in an unfortunate accident. These funds will be needed to support the children throughout the rest of their lives. We do not know from the evidence presented the nature and extent of the children's injuries and what future needs they might have. A parent has a legal and moral duty to support and educate his child and to provide the necessities of life even though the child has sufficient property to do so. *See Alcorn v. Alcorn*, 183 Ark. 342, 35 S.W.2d 1027 (1931). Additionally, in the present case, the testimony clearly shows that appellant is able to work. Therefore, appellant has a duty to support his children. We affirm on this point.

In his second point, appellant argues that the trial court erred in not considering his agreement with Patricia that he did not have to pay support or his assertion that the children were not in her custody the entire period of time for which the arrearages were sought. We disagree.

Appellant relies on the closure form signed by Patricia as evidence that he and she had an agreement for him not to pay child support. First, the form does not, by itself, indicate an agreement. It was simply a request by Patricia that OCSE close her case. Appellant was not involved in that request. However, it does tend to corroborate appellant's testimony because it indicates that Patricia no longer wanted OCSE to collect child support for her. Second, it has long been the law in Arkansas that the interests of a minor, such as in receiving support, cannot be compromised by a guardian without approval by the court. *Davis v. Office of Child Support Enforcement*, 322 Ark. 352, 908 S.W.2d 649 (1995). Our supreme court has further provided that:

> It is not sufficient that a court be made aware of a compromise agreement and that it is agreeable to the guardian; rather, the court must make a judicial act of investigation into the merits of the compromise and into its benefits to the minor. Any judgment by a court that compromises a minor's interest without the requisite investigation is void on its face.

*Id.* at 355–56, 908 S.W.2d at 651–52. Here, there is no proof that the "agreement" was ever presented to or approved by the trial court. Therefore, we cannot say that the trial court erred in failing to consider any agreement that appellant not pay child support.

As for appellant's contention that he should not have to pay support for the period that the children were in foster care, the trial court did give appellant credit for $5,000 in payments even though he did not show any receipts. This sum exceeds the total amount of support due for the period the children were in foster care. Therefore, appellant received the relief he is now requesting. We affirm on this point.

Because appellant's third point and OCSE's cross-appeal both concern the ultimate amount of appellant's support obligation, we discuss them together. Both points assert that the trial court erred in setting appellant's support obligation at $40 per week. Appellant argues that he should not have to pay any support because the children were receiving $1,500 per month from social security and $6,000 from the trust, and OCSE argues that the trial court erred in considering the children's social security benefits and the distribution from the trust in deviating from the child-support chart.

Section V of Arkansas Supreme Court Administrative Order No. 10 sets forth the following factors to be considered when deviating from the amount set by the chart: food, shelter and utilities, clothing, medical expenses, educational expenses, dental expenses, child care (including day care or other expenses for supervision of children necessary for the custodial parent to work), accustomed standard of living, recreation, insurance, transportation expenses, and other income or assets available to support the child from whatever source. Section V then lists what are called additional factors and include the procurement and maintenance of life insurance, health insurance, dental insurance for the children's benefit; the provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children; the creation or maintenance of a trust fund for the children;

the provision or payment of special-education needs or expenses of the child; the provision or payment of day care for a child; the extraordinary time spent with the noncustodial parent, or shared or joint custody arrangements; the support required and given by a payor for dependent children, even in the absence of a court order; and where the amount of child support indicated by the chart is less than the normal costs of child care.

Our supreme court has held that state courts are prohibited by federal law from ordering child-support payments from SSI benefits. *Davie v. Office of Child Support Enforcement*, 349 Ark. 187, 76 S.W.3d 873 (2002); *Davis v. Office of Child Support Enforcement*, 341 Ark. 349, 20 S.W.3d 273 (2000). However, while the supreme court has held that child support cannot be ordered *paid* from SSI benefits, the supreme court has not held that a trial court cannot consider those benefits in determining whether to *deviate* from the child-support chart. The guidelines specifically allow consideration of "other income or assets available to support the child from whatever source" and the creation of a trust for the children as factors in deciding to deviate from the child-support chart. *See* Section V, *supra*.

On this point, appellant repeats much of his argument that he is entitled to credit for the full amount the children receive from social security. This court has rejected the argument that a noncustodial parent is entitled to a downward deviation from the child-support amount provided by the child-support chart on the ground that the amount exceeds a child's actual needs. *Ceola v. Burnham*, 84 Ark. App. 269, 139 S.W.3d 150 (2003). The amount of child support lies within the discretion of the court and the court's findings will not be disturbed on appeal, absent a showing of an abuse of discretion. *Id*. We cannot say that the trial court abused its discretion in setting appellant's support obligation at $40 per week.

Appellant contends as his fourth point that the trial court erred in quashing a subpoena for the trust records from the bank. It is well established law that a trial court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed by this court absent an abuse of discretion that is prejudicial to the appealing party. *Ballard v. Martin*, 349 Ark. 564, 79 S.W.3d 838 (2002). Much of appellant's argument is devoted to the proposition that the order sealing the settlement records does not extend to records created after the settlement for

the purpose of administering the trust. Even if appellant is correct in this assertion, he does not explain how he was prejudiced by the inability to obtain the subpoenaed financial information. The issue before the trial court to which the requested information was relevant was a deviation in the amount of child support to be paid. The trial court granted the requested deviation, based in part on appellant's testimony that the children received $6,000 per month from the special-needs trust. Appellant cannot show how the result would have been different had he received the requested information. We will not reverse without a showing of prejudice. *Carton v. Missouri Pac. R.R.*, 315 Ark. 5, 865 S.W.2d 635 (1993).

In his fifth point, appellant argues that the trial court erred when it denied as untimely his motion seeking findings of fact as to the motion to quash the subpoena to the bank. The order granting the motion to quash was filed on February 9, 2005, and appellant filed his "Motion for Reconsideration/New Trial and Motion for Findings of Fact and Conclusions of Law" on February 22, 2005. On March 16, 2005, the trial court denied the motion as being both without merit and untimely filed under Ark. R. Civ. P. 59(b). Citing Ark. R. Civ. P. 6(a), appellant argues that the motion was timely. A short answer to this point is that, by the plain terms of Ark. R. Civ. P. 52(a), findings of fact and conclusions of law are unnecessary on decisions of motions under the rules. Subpoenas are governed by Ark. R. Civ. P. 45. That rule, in subsection (b)(1), provides that the court, upon motion made prior to the time specified in the subpoena for compliance, may quash or modify the subpoena if it is unreasonable or oppressive. Therefore, the motion to quash was a "motion under these rules" within the meaning of Rule 52(a), and findings of fact and conclusions of law are not required.

Affirmed.

NEAL and BAKER, JJ., agree.