Wade Matthew CEOLA *v.* Ashley (Ceola) BURNHAM

CA 03-574 139 S.W.3d 150

Court of Appeals of Arkansas
Division II
Opinion delivered December 17, 2003

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Sam Hilburn* and *Traci LaCerra*, for appellant.

*Peel Law Firm, P.A.*, by: *Richard L. Peel* and *Jennifer L. Modersohn*, for appellee.

SAM BIRD, Judge. Wade Matthew Ceola brings this appeal contending that the court abused its discretion by following the child-support guidelines and ordering him to pay a percentage of his salary as child support. Ceola's income exceeds the amount of income shown on the family-support chart, and, pursuant to *In Re: Administrative Order No. 10, Arkansas Child Support Guidelines*, 347

Ark. 1064 (2002), he was ordered to pay 15 percent of his monthly income in child support. Ceola contends that the child's mother, appellee Ashley Burnham, is able to adequately support their child and provide for all of the child's reasonable needs; therefore, Ceola contends that the court abused its discretion in not deviating from the family-support guidelines and in not ordering him to pay less than 15 percent of his monthly income in child support. We disagree, and we affirm.

Burnham and Ceola were divorced in 1999, at which time both were in their residencies at the University of Arkansas for Medical Sciences. Burnham was awarded custody of the parties' minor child, Jacob, and Ceola was awarded visitation. At the time of the divorce, Ceola was ordered to pay $390.00 per month based upon his take-home pay at that time. Following the parties' divorce and at the conclusion of his residency, Ceola moved to Springfield, Missouri, to practice as a neurosurgeon. At the conclusion of her residency, Burnham moved to Russellville, where she is a radiologist.

Burnham filed a petition seeking an increase in child support. Ceola conceded that an increase was in order, but requested that the court deviate from the support guidelines. A hearing was held in January 2003 involving the issues of visitation and child support.

Ceola testified that in 2002, he earned $400,000, and he stated that he expected to earn more in the future. He also testified that he had remarried. Kevin Moore, a certified public accountant, testified that based upon financial statements that he had been given, Ceola's net income after taxes was $225,248.00. Ceola testified that he had established a trust fund for Jacob and was in the process of establishing a fund for Jacob's education expenses. He stated that he would like to put some of the money that he pays in child support into a trust fund managed by him rather than Burnham.

Ashley Burnham testified that her annual salary is $320,000. She also stated that she makes sufficient money on her own to support Jacob. She stated that she has no intention of using the money she receives as child support for her own support. She stated that all of the money she receives for child support will be spent on their child or placed into a trust fund. She stated that if she saved all of the child support paid by Ceola in a trust fund, the sum would amount to $390,000 by the time Jacob turned eighteen. She

testified that the divorce decree stated that she and Ceola would each be responsible for one half of the expenses of sending Jacob to college.

The court found that no deviation from the support guidelines was necessary and ordered Ceola to pay 15 percent of his net income as child support, which amounted to $2,650.98 a month. The court wrote that Ceola "should provide a standard of living for the minor child which is consistent with his own standard of living." Based upon Ceola's affidavit of financial means, the court found that he enjoys a "very high standard of living." The court also considered Ceola's pay in comparison to Burnham's pay and found that Burnham's weekly take-home pay represents seventy percent of Ceola's weekly pay. It found that although Ceola had established an educational trust for the minor child, that act does not diminish the fact that considerable expenses are being incurred by Burnham to provide the minor child with a good standard of living. In addition, the court found that there had been no evidence that the child support is not being used by Burnham for the benefit of the child. The court wrote, "The child should not be penalized because the [appellee] has sought to prepare in advance for his education by using her own funds to provide for his housing, clothing, food, entertainment, medical and transportation needs." The court noted that appellee incurred considerable expenses each month in providing the minor child with a good standard of living.

Ceola brings this appeal contending that the court should have deviated from the support chart. He states that he should not have to pay $2,650.98 a month in child support because the child is being well provided for. He argues that because Burnham testified that she did not intend to use the child support for monthly expenses associated with supporting Jacob, then Ceola should not be forced to contribute to his support in the amount of $2,650.98. He argues that by saving the money in an educational IRA, Burnham will not have to pay for one half of the college expenses for Jacob as required by the divorce decree. He asks this court to limit his child-support obligation to the actual amount needed for the child's monthly expenses, which he alleges is $1,700.

■■ The amount of child support lies within the discretion of the court and the court's findings will not be disturbed on appeal, absent a showing of an abuse of discretion. *Smith v. Smith,*

341 Ark. 590, 19 S.W.3d 590 (2000). A trial judge may deviate from the chart amount if it exceeds or fails to meet the needs of the children. *Williams v. Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003). The Legislature has provided that a family-support chart is the appropriate method for determining the amount of support for children by their noncustodial parent. Arkansas Code Annotated section 9-12-312 (Repl. 2002) states:

> In determining a reasonable amount of support to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

 The courts begin with a presumption that the chart amount is reasonable. *Smith v. Smith, supra.* Reference to the chart is required, and the chart establishes a rebuttable presumption of the appropriate amount that can only be modified on the basis of written findings stating why the chart amount is unjust or inappropriate. *Smith v. Smith, supra.* Because the child-support guidelines are remedial in nature, they must be broadly construed so as to effectuate the purpose sought to be accomplished by their drafters. *Williams v. Williams, supra.* The court may grant more or less support if the evidence shows that the needs of the children require a different level of support. *See In Re: Administrative Order No. 10, Arkansas Child Support Guidelines, supra.*

██ Section V of *In Re: Administrative Order No. 10, Arkansas Child Support Guidelines, supra*, sets forth the following factors to be considered when deviating from the amount set by the chart: food, shelter and utilities, clothing, medical expenses, educational expenses, dental expenses, child care (including day care or other expenses for supervision of children necessary for the custodial parent to work), accustomed standard of living, recreation, insurance, transportation expenses, and other income or assets available to support the child from whatever source. The guidelines then list what are called additional factors. They are: the procurement and maintenance of life insurance, health insurance, dental insurance

for the children's benefit; the provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children; the creation or maintenance of a trust fund for the children; the provision or payment of special education needs or expenses of the child; the provision or payment of day care for a child; the extraordinary time spent with the noncustodial parent, or shared or joint custody arrangements; the support required and given by a payor for dependent children, even in the absence of a court order; and where the amount of child support indicated by the chart is less than the normal costs of child care. The Family Support Chart is revised every four years to ensure that the support amounts are appropriate for child-support awards. *See Smith v. Smith, supra.*

In this case, the court made substantial findings that a deviation from the chart was not required. The court stated that Jacob should be supported in a lifestyle similar to the one Ceola has established for himself. He also stated that Jacob should not be punished because Burnham has sought in advance to prepare for his college education. In addition, Burnham's testimony was that she intended to save most of the money, but that she would also spend it on other necessary expenses, such as a car for Jacob when he turns eighteen. One of the factors the court may consider in determining whether or not to deviate from the guidelines is the creation or maintenance of a trust fund for the child. In this case, appellee stated that if she did not spend the money immediately on Jacob, she would not spend it on herself, but would invest it in a trust fund.

The court also considered the pay of both of the parents and found that Burnham made seventy percent of the pay of Ceola. The court found Burnham's monthly expenses total $5,109.73 for housing, gas, electricity, water, telephone, food, clothing, laundry, child care and medical expenses. Her monthly costs associated with transportation are $1,356.65. The court stated that in light of the expenses associated with Burnham's expenditures in maintaining a good standard of living, $2,650.98 per month in child support is neither unjust nor inappropriate.

The court found that Ceola's monthly income amounted to $17,659.65. His expenditures included a $3,043.45 monthly.house payment, and a monthly car payment of $2,524.76. His monthly expenditures include $904.51 on clothing, $25.00 on meals outside the home, $1,304.35 on furniture, $187.08 for lawn

and pool care, and $301.50 per month for entertainment. He also spends $207.46 per month on a video monitor for DVD movies and $10.52 for satellite radio. Under the circumstances, we cannot say that the judge abused his discretion in not deviating from the child-support guidelines. *See Williams v. Williams, supra.*

Affirmed.

STROUD, C.J., and PITTMAN, J., agree.