2010 Ark. App. 184

**Jenifer Rebekah WISE, Appellant**

v.

**Johnny E. WISE, II, Appellee.**

**No. CA 09–513.**

Court of Appeals of Arkansas.

Feb. 24, 2010.

Stephanie Angel Chanberlin, Dodds, Kidd & Ryan, Little Rock, for Appellant.

Orin Eddy Montgomery, Montgomery, Adams & Wyatt, PLC, Little Rock, for Appellee.

JOHN B. ROBBINS, Judge.

In this divorce action, Jenifer Rebekah Wise appeals from the divorce decree and challenges the trial court's award of custody of their son, Wesley, to appellee Johnny E. Wise, II. On appeal, she argues that the trial court clearly erred in basing its custody award on the gender of the father. Ms. Wise further contends that, considering all of the evidence, it was error to award custody to Mr. Wise. We affirm.

In child custody cases, we review the evidence de novo, but we do not reverse the findings of the trial court unless they are clearly erroneous. *Sharp v. Keeler,* 99 Ark.App. 42, 256 S.W.3d 528 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002). We give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* The supreme court has held that there is no other case in which the superior position, ability, and opportunity of the trial court to observe the parties carries a greater weight than one involving the custody of minor children. *Taylor v. Taylor,* 345 Ark. 300, 47 S.W.3d 222 (2001). The best interest of the child is the polestar in every child custody case; all other considerations are secondary. *Id.*

The parties in this case were married on August 7, 1993. Wesley was born on October 27, 1999. Ms. Wise has a daughter, Whitley, from a previous relationship, who was born on September 12, 1990.

The parties separated on March 22, 2007. Ms. Wise filed for divorce on April 22, 2007, and she sought custody of Wesley. Mr. Wise filed a response and counterclaim for divorce on September 21, 2007, and he sought custody of Wesley.

A temporary hearing was held on October 16, 2007. At that hearing it was established that since their separation the parties had shared about equal custody of Wesley. Mr. Wise remained in the marital home in Bigelow, and Ms. Wise had moved in with her parents and then to an apart-

ment in Morrilton. The trial court entered a temporary order on November 2, 2007, granting temporary custody to Mr. Wise, and continuing the mutually agreed upon visitation arrangement.

The final hearing was held on September 3, 2008. On November 18, 2008, the trial court entered the divorce decree awarding custody to Mr. Wise. As for visitation, the decree provides, "During the pendency of this cause, the parties have developed a visitation schedule which allows each to spend approximately equal time with the child; the parties are directed to continue to follow that schedule to provide for [Ms. Wise's] visitation with the child." Because of the extraordinary visitation granted to Ms. Wise, the trial court deviated downward from the child-support chart and ordered Ms. Wise to pay $43.34 per week in child support.

Both parties testified at the temporary hearing. Ms. Wise testified that she has a salon in Damascus where she has worked since the parties' separation. She stated that Mr. Wise's field of employment is excavation, where he works with heavy equipment. Ms. Wise stated that the parties moved into the marital home in Bigelow when Wesley was born, and that it is the only home he has ever known. Ms. Wise testified that she primarily cared for Wesley after he was born. She acknowledged, however, that Mr. Wise was involved in raising Wesley, "changing diapers, feeding and all that stuff."

Mr. Wise testified at the temporary hearing that he does not set his own work hours, but that he is able to modify his work schedule to accommodate his son's schedule. Mr. Wise maintained that he has taken an active role in his son's life since he was born. Mr. Wise said that he takes Wesley to school, helps him with his homework, and coaches his baseball and football teams.

Ms. Wise testified at the final hearing, and she stated that she currently lives with her parents in their house in Bigelow. It is a three-bedroom home, and when she has custody Wesley has his own room. Ms. Wise's daughter, Whitley, has married and lives in Conway.

Ms. Wise testified that after she filed for divorce, she and Mr. Wise unsuccessfully attempted reconciliation. Their attempt to reunify ended in September 2007. According to Ms. Wise, Mr. Wise became more abusive at that point. She recounted a particular incident on September 17, 2007, when she attempted to pick up Wesley at Mr. Wise's house. Mr. Wise refused to allow her custody of Wesley at that time, and hostile words were exchanged. According to Ms. Wise, this culminated with Mr. Wise pushing her toward the door, and then slamming her with the door and locking her out of the house. Ms. Wise went to the sheriff's office and reported an assault, although evidently no charges were filed.

Ms. Wise testified that she has been Wesley's primary caregiver since his birth. She stated that, prior to the parties' separation, she was the only parent who took Wesley to doctor and dentist appointments and attended parent-teacher conferences. Ms. Wise testified that although she is currently employed as a beautician, she is also a licensed nurse.

Ms. Wise testified that when she has custody of Wesley, they go to movies and go out to eat together. While at home, they watch television, play basketball, and take care of their animals. Ms. Wise also stated that Wesley helps her in the garden and with cooking. She also takes Wesley to the park.

Ms. Wise expressed concerns about Wesley being around Mr. Wise's extended family. In particular, she stated that Mr.

Wise's mother has some mental issues. Because of that, she was concerned for her son's safety when Mr. Wise left him in his mother's care.

Ms. Wise also complained that Mr. Wise failed to keep her informed about Wesley's activities. She said that Mr. Wise was not forthcoming with information about Wesley's practice and game schedules.

Ms. Wise's cousin, Melissa Paladino, testified that she has witnessed the parties' interaction with Wesley since birth. She has observed Ms. Wise taking care of Wesley's needs, including buying clothes and school supplies, having birthday parties, and buying his Christmas presents. Ms. Paladino further stated that Ms. Wise did the cooking, and said that she is "your typical mom."

Charles Stane, a friend of Mr. Wise since childhood, testified that Mr. Wise and Wesley interact well together. He stated that he and his son have frequently gone fishing and hunting with Mr. Wise and Wesley. Mr. Stane stated that Mr. Wise is a good dad, but also stated that Ms. Wise is a good mother and has a close relationship with Wesley. He said that before their separation, both parties shared in taking care of Wesley.

Mr. Wise testified that he still lives in the marital home in Bigelow. He stated that Wesley is in third grade at East End Elementary in Bigelow and is a straight-A student. Mr. Wise testified that he helps Wesley with his homework, and will give him a pre-test on the evening before Wesley has a test at school. Mr. Wise also helps Wesley read books.

Mr. Wise stated that he takes Wesley hunting and fishing, and has taught him firearm safety. Wesley participates in organized football and baseball, and Mr. Wise has always been an assistant coach for Wesley's teams. Mr. Wise denied that he had withheld any information from Ms. Wise about Wesley's activities, and he indicated that he will continue to cooperate with Ms. Wise and will not interfere with their relationship. Mr. Wise also testified that when he has custody, he takes Wesley to church on Sunday mornings.

On school days, Mr. Wise takes Wesley to school. After school, Wesley gets off the bus at Mr. Wise's parents' house, which is a mile from his house. Then Mr. Wise's mother brings Wesley to Mr. Wise's house when he gets home from work at around five o'clock. After that Mr. Wise cooks supper, helps Wesley with his homework, and makes sure he takes a bath. According to Mr. Wise, Ms. Wise had never expressed any concern about his mother until her testimony at the final hearing.

Mr. Wise maintained that he spent a lot of time with Wesley prior to the parties' separation, including coaching his teams, helping with school work, and cooking his breakfast and supper. He indicated that since the separation, he has taken Wesley to the doctor when necessary and kept him current on his shots.

Mr. Wise acknowledged an argument with Ms. Wise on September 17, 2007, and said that the argument was over who would keep Wesley. He stated that Ms. Wise was hollering and cussing at him, and that he tried to shut the door to end the confrontation when Ms. Wise put her foot in the door to stop him from shutting it. He denied slamming the door on her and maintained that he has never hit her.

Mr. Wise stated that over the past few years, Ms. Wise was frequently out of town for several days at a time attending beautician conventions, leaving him to care for Wesley. He acknowledged that Ms. Wise was the primary caregiver when Wesley was an infant, but stated that over the last four or five years he considered

himself the primary caregiver. Mr. Wise agreed that Ms. Wise is a good mother.

■ Ms. Wise's first argument on appeal is that the trial court erred in basing its custody award on the gender of the father. Arkansas Code Annotated section 9–13–101(a)(1)(A)(i) (Repl.2008) provides, "In an action for divorce, the award of custody of a child of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child." Ms. Wise takes issue with the trial court's comments from the bench when it was announcing that custody would be placed with Mr. Wise. In particular, the trial court stated that Ms. Wise "had a list of activities that were mostly passive" such as going to movies and watching television, whereas Mr. Wise engaged in a "long list of activities in which there was a very strong participation with him in Wes's life." The trial court also commented that, "I think he's been with his dad, he appears to like it pretty good," and "it just seems to me that he's at a time in his life that this would be a good time for him to be there with his dad, and that's my decision."

Ms. Wise argues that not only did the trial court err in finding that Wesley "has been with his dad," but that it assumed facts not in evidence in finding that "he appears to like it pretty good." Ms. Wise further takes issue with the trial court's findings that her activities with Wesley were mostly passive, noting her testimony that they play basketball together, take care of animals, garden together, and go to the park. While Mr. Wise coaches Wesley's sports and takes him hunting and fishing, Ms. Wise submits that these are predominantly male activities and that by putting emphasis on them the trial court engaged in gender bias. Ms. Wise further argues that the trial court's statement, "he's at a time in his life that this would be a good time to be there with his dad," was not a gender-neutral statement and ran afoul of our current statute.

■ For her second point, Ms. Wise argues that considering all the evidence, the trial court clearly erred in awarding custody to Mr. Wise instead of her. She asserts that the only reason given by the trial court in awarding Mr. Wise temporary custody was the fact that he lived in the marital home, and that even after the temporary custody award was entered the parties continued to share approximately equal custody. In challenging the permanent custody award, Ms. Wise cites Ark. Code Ann. § 9–13–101(b)(2) (Repl.2008), which provides that in making a custody order the court may consider which party is more likely to allow the child frequent and continuing contact with the noncustodial parent. Ms. Wise contends that this factor weighs against Mr. Wise given the testimony that Mr. Wise had refused to give her information about Wesley's scheduled activities. Ms. Wise further contends that the trial court failed to adequately consider the domestic violence perpetrated by Mr. Wise, asserting that the trial court must consider the effect of domestic violence on the best interest of the child.[1] Furthermore, Ark.Code Ann. § 9–13–101(c)(2) (Repl.2008) provides that there is a rebuttable presumption that it is not in

---

1. In support of this proposition, Ms. Wise cites *Cunningham v. Cunningham*, CA06–179, 2006 WL 3020875, which was an unpublished opinion delivered by this court on October 25, 2006. We remind Ms. Wise of the simple mandate set out in Arkansas Supreme Court Rule 5–2 (2009), which orders that unpublished opinions dated prior to July 1, 2009, "shall not be cited, quoted, or referred to by any court or in any argument, brief, or other materials presented to any court (except in continuing or related litigation upon an issue such as res judicata, collateral estoppel, or law of the case)."

the best interest of the child to be placed in the custody of an abusive parent where there is a finding by a preponderance of the evidence that the parent has engaged in a pattern of domestic abuse. Finally, Ms. Wise submits that she has been the primary caregiver, and she cites *Thompson v. Thompson*, 63 Ark.App. 89, 974 S.W.2d 494 (1998), where we held that the fact that a parent has been the child's primary caregiver is relevant and worthy of consideration in determining which parent should be granted custody. When considering all of the evidence and determining the best interest of the child, Ms. Wise argues that it is obvious that the trial court made a mistake in awarding custody to Mr. Wise.

On this record, we cannot say that the trial court's finding that it is in Wesley's best interest to be placed in the custody of Mr. Wise was clearly erroneous. Many of the contentions raised by Ms. Wise were credibility determinations to be decided by the trial court. She argues that Mr. Wise was not forthcoming with information about Wesley's activities, but Mr. Wise denied that allegation and testified that he would not interfere with Wesley's relationship with his mother. Ms. Wise alleges that Mr. Wise engaged in a pattern of domestic abuse, but Mr. Wise testified that he has never physically harmed her. She further posits that she has been Wesley's primary caregiver, which is in contradiction to Mr. Wise's testimony that he has been the primary caregiver for the past several years.

The evidence demonstrated that both parties are good parents. There was no indication that Wesley was not a happy child. He is an excellent student in school and enjoys numerous activities, including playing sports and hunting and fishing with his father. There was evidence that Mr. Wise is quite capable of being the primary caregiver, as he has been able to handle all aspects of Wesley's daily routine, including cooking the meals and helping with homework. And we cannot conclude that custody was awarded based on gender. Although the trial court commented that Wesley is at a time in his life where it  would be a good time to be with his dad, we do not think that this evidenced a bias in favor of Mr. Wise. Rather, it demonstrated that the trial court, upon reviewing the entire evidence, found that it was in Wesley's best interest to be placed in his father's custody. Because that decision was not clearly erroneous, we affirm the divorce decree.

Affirmed.

GLOVER and MARSHALL, JJ., agree.