

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-859

| | |
|---|---|
| | **Opinion Delivered** September 21, 2016 |
| MICHAEL RIDDICK<br>APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. DR-2015-32] |
| V. | HONORABLE MELISSA RICHARDSON, JUDGE |
| EMILY HARRIS (FORMERLY RIDDICK)<br>APPELLEE | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED IN PART AND AFFIRMED IN PART ON CROSS-APPEAL |

## LARRY D. VAUGHT, Judge

Michael Riddick appeals the final order entered by the Circuit Court of Mississippi County denying his motion to modify custody and granting Emily Harris's motion to modify child support. On cross-appeal, Harris argues that the trial court erred in calculating Riddick's income for child-support purposes; finding her in contempt of the summer visitation schedule; modifying Riddick's visitation; denying her request to make Riddick's increased child-support obligation retroactive; and denying her request for attorney's fees. We affirm on direct appeal and reverse in part and affirm in part on cross-appeal.

The parties' divorce decree, entered on February 20, 2009, awarded Harris custody of the parties' son K.R., born May 27, 2007, subject to Riddick's visitation rights. On April 18, 2014, Riddick filed a petition for emergency order of custody, petition to modify the divorce decree, and petition for order to show cause and contempt. Riddick alleged that a material and

substantial change in circumstances had occurred that justified the modification of custody, visitation, and child support. In response, Harris filed a petition for modification of child support.

A final hearing was held on January 21–22, 2015. On June 26, 2015, the trial court issued its final order. Among other things, the trial court denied Riddick's petition to modify custody; granted his petition to modify visitation; granted Harris's petition to modify Riddick's child-support obligation; granted Riddick's petition for contempt and ordered Harris to pay Riddick $500 in attorney's fees; and found that the parties should bear their own attorney's fees. This appeal and cross-appeal followed.

## I. *Direct Appeal*

For his first point on appeal, Riddick argues that the trial court clearly erred in denying his petition to modify custody. The facts were undisputed that since the parties' divorce, Harris had moved twice, had enrolled K.R. in two different school districts, had four boyfriends, had been engaged to two men, had a child (B.G.) out of wedlock with Clayton Gentry, was served a paternity action by Gentry and hired attorney Jim Harris to represent her in that action, began dating Jim Harris (who is twenty-three years older than she) the following month, married him a few months after that, and was expecting his child.

Gentry testified about an incident in the summer of 2013. Around 11:00 p.m., Harris showed up at his apartment unannounced and became upset when she saw another woman there. Gentry said that Harris cursed, called the other woman "bad names," left the apartment, and got into her vehicle, where she had left B.G. alone. Harris then pulled her vehicle up to Gentry's front door, honked, and continued to yell. Gentry came out to the car, and when he

SLIP OPINION

leaned his arm on the car door, which was open, Harris "hammered down on the gas and drove [him] through [his] ditch," until he could stop the vehicle.

Finally, there was evidence that after Riddick had filed the petition to modify custody in April 2014, Harris engaged in a pattern of behavior calculated to limit and diminish K.R.'s relationship with Riddick by unilaterally changing the parties' visitation schedule.

In its letter opinion, the trial court found that a material change in circumstances had occurred. However, the trial court disagreed that a change of custody was in K.R.'s best interest. The court found that both Riddick and Harris were loving, involved parents, who had strong bonds with K.R. The court found that K.R. was happy at the homes of both of his parents. Both stepparents[1] testified that they loved K.R. and welcomed his presence in their homes. The court also found that the parties agreed that K.R. was a happy, well-adjusted child. K.R.'s teacher testified that he was an excellent student, who was motivated and worked hard. The trial court also found that Harris's behavior had stabilized upon her marriage to Jim Harris and that they seemingly had a loving relationship. Further, the court found that there was no evidence that Harris's prior unstable behavior had negatively impacted K.R. Finally, the trial court noted that K.R. had lived the past three years with his younger brother B.G. and that it was in K.R.'s best interest to remain with his sibling.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Evans v. McKinney*, 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of

---

[1] Riddick also remarried.

custody. *Id.*, 440 S.W.3d at 359. The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.*, 440 S.W.3d at 359.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.*, 440 S.W.3d at 359. In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.*, 440 S.W.3d at 359. In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.*, 440 S.W.3d at 359.

Riddick argues that the trial court clearly erred in determining that it was in the best interest of K.R. to remain in his mother's custody. In support of his argument, Riddick restates all of the evidence of Harris's unstable behavior, argues that she has intentionally alienated him from his child, and points out that he and his wife can provide a stable life for K.R.

Based on a de novo review, we hold that the trial court did not clearly err in finding that it was not in K.R.'s best interest to change custody to Riddick. In an extremely detailed letter opinion, the trial court noted that both parents love K.R. and were capable of caring for him. However, the court found there was no reason to alter the current custodial arrangement to which K.R. was accustomed because he is a happy, well-adjusted child, who was performing very well in school. The court also properly considered that K.R. had formed a bond with his

SLIP OPINION

younger brother and that it was important that they continue to live together. *See Sykes v. Warren*, 99 Ark. App. 210, 217, 258 S.W3d 788, 793 (2007) (recognizing that unless exceptional circumstances are involved, young children should not be separated from each other by dividing their custody). Finally, the court found that the questionable behavior of Harris had not negatively impacted K.R. and that since she had remarried, her behavior had stabilized. We will not substitute our judgment for that of the trial court, which observed the witnesses first hand. *Evans*, 2014 Ark. App. 440, at 6, 440 S.W.3d at 360. There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id.*, 440 S.W.3d at 360. Therefore, we affirm on this point.

Riddick's second point on direct appeal is that the trial court abused its discretion in modifying his child-support obligation. As a rule, when the amount of child support is at issue, we will not reverse the trial court absent an abuse of discretion. *Browning v. Browning*, 2015 Ark. App. 104, at 6, 455 S.W.3d 863, 867.

Pursuant to the divorce decree, Riddick was ordered to pay $501 per month in child support. Riddick's support payments were later abated to $472.09 per month to account for his six-week summer visitation. At the January 2015 hearing, the evidence established that Riddick had experienced a material increase in income, which was derived from three sources: wages from his employer Syngenta; rental income; and farm income. In its letter opinions, the

trial court found that Riddick's net monthly income was $8,735.36.[2] The trial court applied this amount to the family-support chart and concluded that Riddick was obligated to pay $1,251.36 in monthly support.

Riddick argues that the trial court abused its discretion by not deviating from the family-support chart. He contends that the trial court failed to take into account factors supporting a deviation, i.e., K.R.'s accustomed standard of living; other income or assets available to Harris to support K.R.; the extraordinary time K.R. spends with Riddick; and depreciation for his farm equipment.

The courts begin with a presumption that the chart amount is reasonable. *Ceola v. Burnham*, 84 Ark. App. 269, 273, 139 S.W.3d 150, 153 (2003). Reference to the chart is required, and the chart establishes a rebuttable presumption of the appropriate amount that can only be modified on the basis of written findings stating why the chart amount is unjust or inappropriate. *Id.*, 139 S.W.3d at 153. Because the child-support guidelines are remedial in nature, they must be broadly construed so as to effectuate the purpose sought to be accomplished by their drafters. *Id.*, 139 S.W.3d at 153. The court may grant more or less support if the evidence shows that the needs of the children require a different level of support. *Id.*, 139 S.W.3d at 153 (citing *In Re: Admin. Order No. 10, Ark. Child Support Guidelines*, 346 Ark. Appx. 1064 (2002)). Administrative Order Number 10 § V sets forth the factors to be considered when deviating from the amount set by the chart.

---

[2] The trial court found that Riddick's monthly income from Syngenta was $5,808.07, that he had no rental income, and that his monthly farm income was $2,927.67.

SLIP OPINION

The record shows that Riddick never asked the trial court to deviate from the family-support chart. There are no pleadings filed below seeking a deviation. At the hearing, Riddick merely offered testimony about his income. There was no argument to the trial court requesting a deviation. Accordingly, there are no findings in the trial court's letter opinions or final order addressing a request for a deviation or explaining why the trial court did not deviate from the chart.

This court will not consider arguments raised for the first time on appeal, and an appellant must obtain a ruling from the trial court on an issue in order to preserve an argument for appeal. *Troutman v. Troutman*, 2016 Ark. App. 70, at 9, 482 S.W.3d 365, 370 (citations omitted). Because the trial court did not rule on the point, this court has nothing to review. *Id.*, 482 S.W.3d at 370. It was Riddick's burden to raise the issue of a deviation from the family-support chart and to obtain a specific ruling on it. His failure to do so precludes this court from considering the merits of his argument.

## II. *Cross-Appeal*

Harris raises five points on cross-appeal. Her first argument is that the trial court abused its discretion in calculating Riddick's income for child-support purposes. Based on her calculations, Riddick owed $2,559.70 in monthly support.

Arkansas Code Annotated section 9-14-201(4)(A) (Repl. 2015) defines the term "income" as "any periodic form of payment due to an individual, regardless of the source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest." Subsection (4)(B) permits the expansion of the definition from time to time in Supreme Court Administrative Order

Number 10—Arkansas Child Support Guidelines. Ark. Code Ann. § 9-14-201(4)(B). *See also* Admin. Order No. 10(II) (providing the same definition of income). Our supreme court has said that the definition of income included in the administrative order "is intentionally broad and designed to encompass the widest range of sources for the support of minor children." *McWhorter v. McWhorter*, 346 Ark. 475, 481, 58 S.W.3d 840, 844 (2001).

It is undisputed that bonus income is income for child-support purposes under the definition of income contained in Administrative Order Number 10. *Kelly v. Kelly*, 341 Ark. 596, 600, 19 S.W.3d 1, 4 (2000). *See also* Admin. Order. No. 10 (II)(b). Also, in *Ford v. Ford*, 347 Ark. 485, 495, 65 S.W.3d 432, 439 (2002), we affirmed the trial court's finding that a one-time retirement payment received by the appellant fell within the broad range of her income for child-support purposes.

Relying on Riddick's 2014 earning statement, Harris argues that the trial court abused its discretion in failing to include "SIP" of $11,977.90 and "Other Benefits"[3] of $26,257.60 in Riddick's income. "SIP" is not defined on this record; however, it is listed on Riddick's earnings statement under his salary, and he testified that he received a bonus twice a year. "Other Benefits" received by Riddick include retirement income, and Riddick testified that his employer contributed to his 401(k) plan. The trial court did not make findings as to whether "SIP" or "Other Benefits" were income or explain why it did not include these amounts. Considering that the definition of income is intentionally broad and designed to encompass the widest range of sources for the support of minor children, we conclude that the trial court

---

[3] Items listed as "Other Benefits" in the earnings statement include: "Medical Employer," "Dental Employer," "401K Employer," "Basic Life Employer," "Basic AD&D Employer," "LTD Employer," and "EE GTLI Taxable."

abused its discretion in failing to either include these amounts in Riddick's income calculation or explain why these amounts should not be included. Accordingly, we reverse and remand on this point.

Harris also argues that the trial court clearly erred in failing to add rental depreciation to Riddick's rental income. This argument was not raised below; therefore, it is not preserved for appeal. *Troutman*, 2016 Ark. App. 70, at 9, 482 S.W.3d at 370.

Harris's final argument under this point is that the trial court abused its discretion in considering Riddick's 2012 tax returns to determine his farm income. She contends that the 2012 tax returns should not have been considered because Riddick did not start the farm until the fall of that year; therefore, all he had were losses.

Pursuant to Administrative Order No. 10, to determine support for self-employed payors, the trial court should first consider the payor's last two years' federal and state income tax returns and the quarterly estimates for the current year. Admin. Order No. 10, § III(c). Here, the trial court complied with Administrative Order No. 10 when it based its determination of Riddick's farm income on his 2012 and 2013 federal and state income tax returns. At the time of the hearing, January 2015, Riddick had not filed his 2014 returns, and he did not introduce 2014 quarterly estimates. As such, the trial court used the only tax records presented. Therefore, we cannot say that the trial court abused its discretion in considering Riddick's 2012 tax returns to determine his farm income.

Harris's second point on cross-appeal is that the trial court erred in finding her in contempt of the summer-visitation schedule. When the parties divorced, the decree awarded Riddick standard visitation with additional overnight visitation each Wednesday night until

K.R. reached kindergarten. The facts demonstrated that from 2010 until 2014, Harris and Riddick worked well together regarding visitation and had even expanded visitation beyond that stated in the decree and standard schedule.[4]

After Riddick filed for custody, the cooperation ended. The evidence demonstrated that Harris restricted visitation to standard visitation. With regard to summer visitation, the facts established that on May 11, 2014, Riddick requested, in writing, summer-visitation dates to start June 12, 2014. Harris agreed that she received the letter on May 12, 2014; however, she refused to allow Riddick visitation as requested claiming that he failed to provide timely notice as per the standard visitation schedule. She contended that Riddick was required to give thirty days' notice prior to the first Friday in June. She also stated that she did not like the schedule that Riddick proposed and that she wanted K.R. to have the same summer-visitation schedule as his brother had with his father. As such, she limited Riddick's summer visitation to multiple two- or three-week visits instead of their traditional one six-week visit.

The trial court found that Harris's behavior was a willful violation of the decree's summer-visitation schedule. The trial court found that Harris's interpretation of the visitation schedule was "unusual"; that she had not interpreted the visitation schedule in that fashion in the years prior to 2014; that Riddick had provided timely notice as per the schedule; and that Harris did not premise her violation on the advice of counsel because she admitted she wanted the default visitation schedule so that she could coordinate her children's visitation, and she

---

[4] Harris allowed Riddick to have overnight visitation on Wednesdays, extended weekend visitation, extended summer visitation, and time with K.R. the morning of his first days of kindergarten and first grade.

did not want to accommodate Riddick after he had sued her for custody. Based on her contempt, the trial court ordered her to pay Riddick attorney's fees of $500.

The disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt. *Scudder v. Ramsey*, 2013 Ark. 115, at 12, 426 S.W.3d 427, 435. However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Id.*, 426 S.W.3d at 435. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Id.*, 426 S.W.3d at 435. The contempt in this case was civil because the award of attorney's fees and costs was for the benefit of Riddick and was thus remedial in nature. *Id.*, 426 S.W.3d at 435. The standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Id.*, 426 S.W.3d at 435.

Harris contends that the standard schedule is ambiguous, her interpretation of it was not unreasonable, and her interpretation was based on the advice of counsel.[5] The standard summer visitation schedule is not ambiguous. It provides,

> Written notice as to the time and manner of visitation will be provided by the non-custodial parent to the custodial parent at least 30 days in advance of the exercise of visitation. In the event that no notice is given, the default summer visitation schedule shall be as follows: Begin at 6:00 p.m. on the first Friday in June and continue for two weeks. After a one-week break, begin again for two weeks. After a one-week break begin again for the final two-week period.

---

[5] Harris also argues that she cannot be held in contempt for violating the standard visitation schedule because it was not attached to the decree and is not part of the case file. However, we note that she is also arguing that Riddick should have been forced to adhere to the notice provisions of the standard schedule. She cannot rely on the standard schedule when it works to her advantage and ignore it when it works to her disadvantage. We further note that the standard visitation schedule is included in the record and addendum. Therefore, we reject these arguments.

The plain language of the provision states that notice by the noncustodial parent should be given thirty days before the day that parent wants to exercise visitation. Riddick complied with this provision. Harris's interpretation is unreasonable, and the parties had not interpreted the summer schedule in this fashion in any of the summers leading up to 2014. Finally, Harris testified that she restricted Riddick's summer visitation because she did not like the schedule he proposed, she wanted K.R. and her other son to have the same visitation schedule, she was angry with Riddick for filing the petition for custody, and she did not want to accommodate him any further. Accordingly, we hold that the trial court's finding that Harris was in contempt of the summer-visitation provision of the standard schedule was not clearly against the preponderance of the evidence.

Harris's next point on cross-appeal is that the trial court clearly erred in increasing Riddick's visitation. She contends the finding was improper because he did not ask for increased visitation and it was made to punish her.

The same standard of review applicable to the modification of custody applies to the modification of visitation. We consider the evidence de novo. *Baber v. Baber*, 2011 Ark. 40, at 9, 378 S.W.3d 699, 705. We will not reverse the trial court's findings unless they are clearly erroneous. *Id.*, 378 S.W.3d at 705. When the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.*, 378 S.W.3d at 705.

A trial court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not

known to it at the time of the initial order. *Id.*, 378 S.W.3d at 705. Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations. *Id.*, 378 S.W.3d at 705. Thus, the party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants such a change. *Id.*, 378 S.W.3d at 705.

The primary consideration regarding visitation is the best interest of the child. *Id.*, 378 S.W.3d at 705. Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.* at 10, 378 S.W.3d at 705. Fixing visitation rights is a matter that lies within the sound discretion of the trial court. *Id.*, 378 S.W.3d at 705.

The trial court did not sua sponte increase Riddick's visitation. Riddick, in his petition for emergency order of custody, petition to modify, and petition for order to show cause and contempt, alleged that a "material and substantial change in circumstances has occurred which justifies this Court entering an Emergency order of custody, and modifying the previous orders of this Court with regard to custody, visitation, and child support." Therefore, the issue was properly raised by Riddick below.

Upon review of the trial court's findings, we are not persuaded by Harris's assertion that the trial court modified visitation for the sole purpose of punishing her. Without restating each of the examples of Harris's unstable behavior, it is clear that there is more than sufficient

evidence on this record to support the trial court's finding that there had been a material change in circumstances since the entry of the divorce decree. And while the trial court did voice its displeasure with Harris's efforts to curtail and control Riddick's visitation, it is clear that the increase in visitation awarded to Riddick was based on the trial court's finding that the modification was in K.R.'s best interest. The trial court stated in its letter opinion that the "modification reflects the reality of what [Harris] and [Riddick] had independently assessed to be in [K.R.'s] best interests in the years prior to the instant action." We therefore hold that the trial court did not clearly err when it increased Riddick's visitation.

Next, Harris argues that the trial court abused its discretion in denying her request to make Riddick's increased child-support obligation retroactive. The trial court ordered Riddick to begin making increased child-support payments in January 2015, the month of the final hearing. Harris argues that this was error based on Arkansas Code Annotated section 9-14-107(d) (Repl. 2015), which provides that any modification of a child-support order that is based on a change in gross income of the noncustodial parent shall be effective as of the date of filing a motion for increase or decrease in child support unless otherwise ordered by the court. She contends that under this statute, the trial court should have ordered Riddick make support payments retroactive from the date she filed her petition to modify child support in May 2014 and that there was no reason to not comply with the statute.

This issue is reviewed for an abuse of discretion. *Tucker v. Tucker*, 96 Ark. App. 194, 199, 239 S.W.3d 532, 536 (2006) (citing *Heflin v. Bell*, 52 Ark. App. 201, 916 S.W.2d 769 (1996)). The trial court did not abuse its discretion in not applying the increased child support retroactively. Section 9-14-107(d) provides for retroactive application *unless otherwise ordered by*

*the court.* Here, the trial court found that Harris and her husband both testified that K.R. was well supported in their home during the eight months after she had filed the petition to modify child support. The court further found that there was no evidence that K.R. was negatively impacted by Riddick's payment of the lower amount of child support during that time period. Based on these findings, the court concluded,

> [H]aving carefully considered all factors pertaining to the best interests of the child, as well as being mindful of the Court's discretion as to whether to order retroactive imposition of child support, the Court hereby specifically rules that the modified support amount . . . shall not be retroactive to the date of the filing of the petition to modify. Instead, the first such increased payment shall be due for the month of January 2015 and each month thereafter.

Contrary to Harris's argument, the trial court gave reasons for not applying the increased child support retroactively. Because the court specifically ordered that the increase not be retroactive, and gave reasons for doing so, we conclude that it did not abuse its discretion and affirm on this point.

Harris's fifth and final point on cross-appeal is that the trial court abused its discretion in denying her request for attorney's fees. She argues that Riddick has the financial means to pay her fees and she does not.[6]

In domestic-relations proceedings, the trial court has the inherent power to award attorney's fees, and the decision to award fees and the amount of those fees are matters within the discretion of the trial court. *James v. Walchli*, 2015 Ark. App. 562, at 6–7, 472 S.W.3d 504,

---

[6] Harris's argument heading also asserts that reversal is warranted because she was the prevailing party. However, the body of her argument does not discuss this argument. If an argument heading raises an issue but the body of the argument does not address the issue, we will not reach it on appeal. *Adams v. Howard*, 2014 Ark. App. 328, at 7 n.3, 436 S.W.3d 473, 478 (citing *Jones v. McLemore*, 2014 Ark. App. 147, 432 S.W.3d 668).

508 (citations omitted). Absent an abuse of that discretion, an award of fees will not be disturbed on appeal. *Id.* at 7, 472 S.W.3d at 508 (citations omitted).

The trial court did not abuse its discretion in denying Harris's request for attorney's fees. First, the trial court was in a better position to analyze the request in light of the pleadings, motions, orders, conferences, and hearings filed or conducted in this matter. *Scroggins v. Scroggins*, 302 Ark. 362, 368, 790 S.W.2d 157, 161 (1990). Second, Harris focuses only on the disparity of the parties' respective incomes when arguing she is entitled to fees. This factor, while relevant, cannot alone justify an award of attorney's fees. *Id.*, 790 S.W.2d at 161. Third, we note that each party raised multiple issues in this case. In addition to defending the claim for modification of custody, she was pursuing a child-support increase, retroactive support, and contempt against Riddick. She did not prevail in all of these matters. Therefore, we hold that the trial court did not abuse its discretion in denying Harris's request for attorney's fees.

Affirmed on direct appeal; reversed and remanded in part and affirmed in part on cross-appeal.

HIXSON and BROWN, JJ., agree.

*Martin E. Lilly*, for appellant/cross-appellee.

*Law Office of Wendell L. Hoskins II*, by: *Wendell L. Hoskins II*, for appellee/cross-appellant.