
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-913

| | | |
|---|---|---|
| NIKONA J. CALHOUN (FITZGERALD) | | **Opinion Delivered:** April 19, 2017 |
| | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22DR-13-93] |
| V. | | |
| JEREMY CALHOUN | APPELLEE | HONORABLE KENNETH JOHNSON, JUDGE |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

This is a child-custody case where the sole argument on appeal is that the circuit court erred in divesting the "the primary custodial parent" of her educational decision-making authority. We affirm the circuit court's decision that the minor child should continue to attend the Monticello public schools.

I.

Nikona and Jeremy Calhoun divorced in 2013. The divorce decree provided:

The parties are awarded Joint Legal custody of the minor child, with the Plaintiff [Nikona] being awarded primary physical custody. That the child will remain in [Nikona's] custody every weekend beginning Sunday evenings at 4:30 p.m. until school lets out on Thursday evening. [C.C.] shall be in the Defendant's [Jeremy's] custody from Thursday evenings after school until [sic] 4:30 p.m. on Sundays.

Jeremy was ordered to pay Nikona $482 a month in child support.

About six months later, in April 2014, Nikona filed a "petition for contempt citation, to modify visitation and child support, and for change of legal custody." She alleged that the visitation schedule allowed Jeremy to be the "fun parent" on the weekends, leaving her

to do the "heavy lifting" of parenting during the week. Nikona asked the court to award her sole legal custody, consistent with her status as primary physical custodian because Jeremy had refused to cooperate with her on important parenting issues. Jeremy counterclaimed and asked the circuit court to award primary physical custody of C.C. to him and to terminate his child-support obligation.

The court held a bench trial in November 2015 but did not enter a final written order until June 2016, which states in pertinent part:

> 8. CUSTODY. Considering the best interest and welfare of the minor child, the Court finds that the present custody schedule should remain as joint custody with the Plaintiff [Nikona] continuing to have primary physical custody. However, the joint custody arrangement shall be on a week to week basis with the minor child continuing to go to school in Monticello, Arkansas. The weekly swap will be on Mondays instead of Sundays to avoid any problems with baseball tournaments. This schedule would offer both parties the opportunity to do parenting during the school week and yet have quality or fun time on the weekends. . . . The parties will alternate or split holiday time. If they cannot agree, the Court will make that decision for them.
>
> 9. CHILD SUPPORT. Because of the equal time to be spent with their son, neither party will be required to pay child support in the future.

Nikona appeals the June 2016 order; her sole argument is that the court erred in divesting her (in her words "the primary custodial parent") of her decision-making authority regarding C.C.'s education. Here is some background to understand the argument.

II.

Nikona would like C.C. to attend the Crossett public schools because she must drive C.C. about 45 minutes to school in Monticello and then drive farther to her job at the University of Arkansas at Monticello McGehee—a total of three hours on the road per day.

Nikona lives in Crossett with her new husband, her family is there, and they could help get C.C. to and from school. Nikona testified that she was trying to find a job in Crossett.

Jeremy, on the other hand, wants C.C. to go to school in Monticello, because he has always gone to school in Monticello. Jeremy was concerned about a transfer to Crossett because C.C. doesn't make friends well, doesn't talk much, and is socially awkward. Jeremy testified that Monticello students have above-average test scores, and Crossett students have below-average ones. He also said that he doesn't want C.C. to go to a school with numerous weapons incidents like the ones Crossett had the year before. Jeremy was worried that C.C. might get mixed in with "the wrong crowd." Jeremy works in Crossett at least a few days a week but lives in Wilmar, which is near Monticello.

The attorney ad litem testified that it was like pulling teeth to get C.C. to talk and that she was worried about a school change because of C.C.'s quietness and social awkwardness. She expressed concern that C.C. had not made more friends in his mother's new neighborhood. She reported that C.C. wanted to live with his dad because "it is more fun, he gets to do all of the things he likes to do" and that his mom was more of a do-your-homework mom. The ad litem recommended that C.C. spend equal time with both parents.

C.C. testified at a posttrial hearing that he has friends in Monticello but not many friends in Crossett. He said that he could go to school in Crossett and thought it would be a good fit because his dad could take him to school because he "works quite a bit in Crossett" and he would not have to ride the bus to where his stepmother (Jeremy's wife) works in Monticello. He also said that it "gets old" going to his stepmother's work after

SLIP OPINION

school in Monticello since his father cannot pick him up from school there. On cross-examination, C.C. agreed that his mother "sort of put a guilt trip" on him about taking him to school in Monticello. C.C. said his preference was to stay in Monticello, but he also testified he was ok with Crossett. When he was further questioned by the court, C.C. stated that he did not have a preference about where he wanted to go to school. He said he is happy in Monticello and that he thought he would be happy in Crossett.

III.

When reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Riddick v. Harris*, 2016 Ark. App. 426, at 4, 501 S.W.3d 859, 864. Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Alphin v. Alphin*, 364 Ark. 332, 336, 219 S.W.3d 160, 162 (2005). If the circuit court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the circuit court could have found a change in circumstances. *Williams v. Geren*, 2015 Ark. App. 197, at 10, 458 S.W.3d 759, 766.

The primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Rice v. Rice*, 2016 Ark. App. 575, at 4–5, 508 S.W.3d 80, 84. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be

in the best interest of the child. *Id.* Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* The reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.* To change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; the party seeking modification has the burden of showing a material change in circumstances. *Id.* If that threshold requirement is met, the circuit court must then determine who should have custody, with the sole consideration being the best interest of the children. *Williams*, 2015 Ark. App. 197, at 10, 458 S.W.3d at 766. Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Id.*

The issue here is a narrow one: was the circuit court's decision about what school C.C. should attend clearly erroneous? It was not. The parties had joint legal custody, and in the end could not agree on where C.C. should attend school. Nikona's status as primary physical custodian does not mean that she has sole decision-making authority on where C.C. must attend school. Because of the parents' deadlock, the circuit court resolved the impasse and decided that C.C. should remain in the Monticello public schools. That decision, while inconvenient for Nikona, is not clearly erroneous—especially given the testimony that C.C. was quiet, socially awkward, and had difficulty making friends. The attorney ad litem expressed concern about C.C. switching schools. The circuit court had

the benefit of viewing C.C.'s demeanor during testimony about which school he preferred, and we defer to the circuit court's consideration of C.C.'s best interest.  On the whole, we see no reversible error and therefore affirm the court's decision that C.C. should remain in the Monticello public schools.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*J. Slocum Pickell*, for appellant.

*Mary Thomason*, for appellee.