RAYMOND R. ABRAMSON, Judge
This case is before us a third time following remand. See Montez v. Montez , 2018 Ark. App. 55, 539 S.W.3d 630 ( Montez II ); Montez v. Montez , 2017 Ark. App. 220, 518 S.W.3d 751 ( Montez I ). On appeal, Daniel Montez argues that the circuit court rendered a judgment inconsistent with our holdings in Montez I and Montez II by awarding sole custody of his children to his former wife, Consuela Montez. Daniel alternatively argues that the circuit court erred by (1) failing to obtain the recommendation of the attorney ad litem, (2) not granting custody to him, and (3) failing to apply the factors that warrant a downward deviation for child support. We affirm.
We first briefly discuss the background of the proceedings as outlined in Montez I and Montez II . On January 9, 2015, the Washington County Circuit Court entered a divorce decree for Daniel and Consuela. The decree incorporated the parties' child-custody agreement in which they agreed to joint custody of their children, M.M. and J.M.,[1] and due to the joint-custody arrangement, neither party was ordered to pay child support. Thereafter, on October 29, 2015, Consuela filed a motion to modify the child-support agreement, and on February 11, 2016, both Daniel and Consuela filed motions for modification of custody.
*404 The court held a hearing on June 6, 2016, wherein the testimony showed that communication between Daniel and Consuela had significantly deteriorated. There was further testimony that J.M.'s demeanor had changed and that M.M. had significant disciplinary issues since the parties' divorce. The evidence also showed that Consuela had married Richard Trujillo, who was incarcerated at that time for his fourth driving-while-intoxicated offense, and that the couple had a volatile relationship.
Following the hearing, the court entered an order finding that the parties had failed to establish a material change in circumstances warranting modification of custody and that it was in the best interest of the children for the joint-custody arrangement to continue. The court ordered both Daniel and Consuela to pay child support, but the court offset Daniel's obligation with Consuela's obligation.[2] Daniel appealed the decision to this court and argued that the circuit court erred in finding that he had failed to establish a material change in circumstances warranting modification of custody.
This court agreed. We cited our caselaw holding that when the parties have fallen into such discord that they are unable to cooperate in sharing physical care of their children, this constitutes a material change in circumstances affecting the children's best interest. See Montez I , 2017 Ark. App. 220, 518 S.W.3d 751 (citing Word v. Remick , 75 Ark. App. 390, 58 S.W.3d 422 (2001) ). We further cited caselaw in which we had reversed the continuation of a joint-custody arrangement on a motion to modify custody when "there was a mountain of evidence ... demonstrating that the parties could no longer cooperate in reaching shared decisions in matters affecting their children." Id. at 9, 518 S.W.3d at 757 (quoting Doss v. Miller , 2010 Ark. App. 95, at 8, 377 S.W.3d 348, 354 ). We reversed the circuit court's award of joint custody and remanded the case to the circuit court for an award of custody consistent with the opinion. Id.
Following remand, on June 6, 2017, the circuit court entered a written order finding that a material change in circumstances had occurred following the entry of the divorce decree but nonetheless found it was not in the best interest of the children to change the custody arrangement. The circuit court concluded that the children benefited from extended time with both parents and ordered the joint-custody arrangement to continue. The circuit court ordered the parties to communicate by telephone daily.
Daniel appealed the June 6, 2017 order to this court. On appeal, Daniel argued that the circuit court failed to render a judgment consistent with our opinion in Montez I . See Montez II , 2018 Ark. App. 55, 539 S.W.3d 630. We agreed with Daniel and held that the circuit court failed to execute our mandate. Id. We again reversed and remanded to the circuit court for termination of the joint-custody arrangement, and we directed the circuit court to make a sole-custody determination with a corresponding child-support determination. Id.
On remand, the circuit court held a hearing on March 8, 2018. On April 2, the court entered a written order awarding Consuela sole custody of the children but ordering her and Daniel "to share parenting time with the children equally using a 50/50 schedule in the manner previously *405 ordered which the parties/parents have followed since the divorce." As to child support, the court ordered that Daniel's child-support obligation shall no longer be offset against Consuela's obligation due to the termination of the joint-custody arrangement. Specifically, the court ordered Daniel to pay Consuela $ 3,666 a month in child support.[3] This appeal followed.
On appeal, Daniel first argues that the circuit court erred by failing to render a judgment consistent with our holdings in Montez I and Montez II . He concedes that the circuit court technically followed the mandates when the court awarded sole custody to Consuela; however, he argues that the order violates the spirit of the mandates because the court maintained the previous visitation schedule, and in Montez I , we found that arrangement to be against the best interest of the children.
We disagree with Daniel and hold that the circuit court did not render a judgment inconsistent with Montez I and Montez II . In Montez I , we held that given the evidence that Consuela and Daniel could not communicate, the circuit court erred in finding that Daniel had failed to establish a material change in circumstances warranting modification of the joint-custody arrangement. Thereafter, in Montez II , we held that the circuit court failed to execute our mandate in Montez I because the court maintained the same custody arrangement following our remand. We directed the circuit court to make a sole-custody determination. In the instant case, it did not maintain the previous arrangement. The court awarded Consuela sole custody of the children. Thus, Consuela is charged with the decision-making responsibilities, and she and Daniel are no longer required to communicate and cooperate on those decisions. Accordingly, we find no error on this point.
Daniel next argues that the circuit court erred by failing to obtain a second recommendation of the attorney ad litem on remand. This court has recommended the appointment of guardians ad litem in custody cases, but ad litems are not required by statutory law in custody actions. See Malone v. Malone , 4 Ark. App. 366, 631 S.W.2d 318 (1982) ; Kimmons v. Kimmons , 1 Ark. App. 63, 613 S.W.2d 110 (1981). We review the circuit court's decision to appoint an attorney ad litem for an abuse of discretion. Kuelbs v. Hill , 2010 Ark. App. 427, 379 S.W.3d 47. In this case, at the June 6, 2016 hearing, the ad litem provided the circuit court with her evaluation of the parties, the children, and their relationships, and on remand, the parties did not present any new evidence. Given these circumstances, we cannot say the circuit court erred by failing to obtain a second recommendation of the ad litem.
Daniel next argues that the circuit court erred by not granting sole custody to him. He asserts that the court disregarded the facts that Consuela married a felon and that they have a volatile relationship. He cites Arkansas Code Annotated section 9-13-101(c) (Repl. 2013) and asserts that the court failed to recognize the rebuttable presumption that the children be placed with him.
*406 In child-custody cases, we review the evidence de novo, but we do not reverse the findings of the circuit court unless they are clearly erroneous. Sharp v. Keeler , 99 Ark. App. 42, 256 S.W.3d 528 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Ford v. Ford , 347 Ark. 485, 65 S.W.3d 432 (2002). We give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. Id. The supreme court has held that there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than one involving the custody of minor children. Taylor v. Taylor , 345 Ark. 300, 47 S.W.3d 222 (2001). The best interest of the child is the polestar in every child-custody case; all other considerations are secondary. Id. Arkansas Code Annotated section 9-13-101(c)(2) provides that there is a rebuttable presumption that it is not in the best interest of the child to be placed in the custody of an abusive parent when there is a finding by a preponderance of the evidence that the parent has engaged in a pattern of domestic abuse.
We hold that the circuit court did not err by granting sole custody to Consuela. In making its decision, the court relied on the facts that Consuela had been the primary caregiver during the parties' marriage and that since the divorce, she had continued to be the primary decision-maker regarding the children's educational and medical matters. Further, as to the domestic abuse, many of the contentions concerning the abuse were credibility determinations to be decided by the circuit court. See Wise v. Wise , 2010 Ark. App. 184, 374 S.W.3d 704. Accordingly, we cannot say that the circuit court erred in finding that it was in the children's best interest for Consuela to have sole custody.
Daniel finally argues that the circuit court abused its discretion by not deviating from the family-support chart. He contends that the circuit court failed to consider factors supporting a deviation, i.e., that he created a trust for the benefit of the children, that he had equal physical custody of the children, and that he paid the full cost of their health insurance.
The courts begin with a presumption that the chart amount is reasonable. Ceola v. Burnham , 84 Ark. App. 269, 139 S.W.3d 150 (2003). Reference to the chart is required, and the chart establishes a rebuttable presumption of the appropriate amount that can only be modified on the basis of written findings stating why the chart amount is unjust or inappropriate. Id. Because the child-support guidelines are remedial in nature, they must be broadly construed so as to effectuate the purpose sought to be accomplished by their drafters. Id. The court may grant more or less support if the evidence shows that the needs of the children require a different level of support. Id. (citing In Re: Admin. Order No. 10, Ark. Child Support Guidelines , 346 Ark. App'x. 1064 (2002) ). Administrative Order No. 10 (V) sets forth the factors to be considered when deviating from the amount set by the chart.
In this case, Daniel did not ask the court to deviate from the family-support chart after the court awarded Consuela sole custody of the children. Thus, there are no findings addressing a request for deviation or an explanation why the court did not deviate from the chart based on the sole-custody arrangement. See Riddick v. Harris , 2016 Ark. App. 426, 501 S.W.3d 859 (declining to consider an argument that the circuit court failed to deviate from *407 family-support chart because appellant did not ask the court for a deviation). This court will not consider arguments raised for the first time on appeal, and an appellant must obtain a ruling from the circuit court on an issue in order to preserve an argument for appeal. Id. Because the circuit court did not rule on the point, this court has nothing to review. Id. It was Daniel's burden to raise the issue of a deviation from the family-support chart and to obtain a specific ruling on it, and his failure to do so precludes this court from considering the merits of his argument.
Affirmed.
Harrison and Murphy, JJ., agree.

M.M. turned eighteen on April 14, 2018.

Specifically, the court found Consuela's monthly child-support obligation to be $ 631 and Daniel's obligation to be $ 6,910. Accordingly, it ordered Daniel to pay Consuela $ 6,279 a month.

In calculating Daniel's child support, the court relied on its February 15, 2018 order on Daniel's motion to modify his child support. In that order, the court found Daniel's monthly net income to be $ 17,775 and accordingly modified his child support to $ 3,666 a month. The court determined Consuela's child support to be $ 530 a month. Because the joint-custody arrangement was in place at that time, the court offset Daniel's obligation by Consuela's obligation and ordered Daniel to pay Consuela $ 3,136 a month in child support.